STATE of Missouri, Plaintiff–Respondent,

v.

Arthester McCREUISTON, Defendant–Appellant.

No. 41030.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 23, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 14, 1980.

Application to Transfer Denied Jan. 13, 1981.

Robert C. Babione, Public Defender, St. Louis, for defendant–appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff–respondent.

DOWD, Presiding Judge.

Arthester McCreuiston, defendant herein, appeals from his conviction by a jury of Robbery in the First Degree, Armed Criminal Action and two counts of Assault with Intent to Kill without Malice. His punishment was assessed at five, ten, five and five year terms respectively, all to be served consecutively.

On the evening of February 16, 1978 Robert Welby and a woman, and Jeffrey Hesse drove into a parking lot of a bar located near the riverfront. Before they alighted from the car, the defendant, armed with a gun and another man, Ronnie Roberts, approached and ordered the occupants to open

the car doors. The defendant and Roberts got into the car and demanded money. They took the woman's purse and removed her billfold. Several minutes later a third man, Lee Beal, joined the defendant and Roberts. The defendant then ordered Mr. Welby at gunpoint to drive from the parking lot. As they drove away, Mr. Hesse managed to escape from the automobile and report the incident to the police. After driving for several minutes during which time the victims were continually threatened with loss of their lives, Mr. Welby was ordered to drive into an alley and park. Mr. Welby was then forced out of the car and ordered to surrender his watch and coat. Meanwhile, Lee Beal raped the woman in the presence of Mr. Welby.

The defendant subsequently ordered everyone back into the car and they proceeded down the street. Shortly thereafter the police approached from behind and signaled Mr. Welby to pull over. The defendant, Lee Beal and Ronnie Roberts jumped from the car and began running. Lee and Ronnie were apprehended immediately but the defendant managed to escape, firing his gun at Officer Chapman. The defendant was later arrested at his home.

■ The first point raised by the defendant in his appeal is that his statement made while in custody was not given voluntarily. Defendant claims that he was not told that if he could not afford an attorney one would be appointed for him. He also claims that he was beaten and deprived of food prior to making his statement.

Officer Podalak testified at the hearing to suppress defendant's statement that he advised the defendant that "he had the right to remain silent, anything he said could be used against him in a court of law, he had a right to an attorney while [he was] being questioned." Defendant asserts that this is evidence that he was not advised that if he could not afford an attorney one would be appointed for him. Officer Podalak later testified that he read the defendant his rights from a standardized form the contents of which were read into evidence. The form as read into the record states among other things that defendant "may retain counsel at [his] own expense or counsel will be appointed for [him] at no expense to [him]."

The only evidence presented by the defendant to support his allegation that he was mistreated is his own testimony that after arrest he was choked, hit and kicked, his arm was twisted and he was deprived of food for a period of approximately five hours. Defendant claims that as a result of this treatment he made a statement in which he denied involvement in the incident and claimed to have left his pistol at his girlfriend's house on the day prior to the incident. Officers Podalak and Priest, who took the defendant's statement, testified that they did not touch nor see anyone else touch the defendant.

Defendant, by seeking relief on his first point asks this court to judge the credibility of the evidence presented. It is not within the jurisdiction of this court to weigh the evidence nor judge the credibility of witnesses. That is more properly left to the discretion of the trial court. *State v. Carroll,* 562 S.W.2d 772, 773 (Mo.App.1978). We do not find any abuse of discretion in the trial court's finding that the defendant's statement was made voluntarily particularly in view of the fact that the defendant's statement was not self–incriminating.

Point one is ruled against the defendant.

Defendant claims in his second point that the trial court erred in admitting testimony related to station house and in–court identifications of him by the officers called to the scene and by the victims.

■ This point has not been preserved for appeal in that timely objection was not made during trial. *State v. White,* 549 S.W.2d 914, 917 (Mo.App.1977). After a review of the record we conclude, however, that the pretrial identification of the defendant was not suggestive nor did the trial court err in admitting into evidence the in–court identification of defendant.

Defendant claims that none of the witnesses was afforded sufficient opportunity

to observe him during the perpetration of the crime, that the witnesses saw the defendant in custody before and after the lineup and that the witnesses' emotional states precluded objective identification. Two of the witnesses, Mr. Welby and the woman, testified that they were in the car with the defendant for approximately half an hour to forty–five minutes. The defendant was sitting or standing close to Mr. Welby and the woman from the time the defendant got into Mr. Welby's car until he made his escape. Mr. Welby described the defendant as he appeared the night of the robbery as about six feet tall, thin, with dark complexion and black hair. Mr. Welby was also able to describe the clothing worn by the defendant. Mr. Hesse also was within range of the defendant for approximately ten minutes. Shortly after his escape from the car, Mr. Hesse described the defendant and his cohorts to an officer on the street.

Both Officers Chapman and Janz testified that during their attempt to arrest the defendant at the scene they were able to observe the defendant twice, from about 15 feet and again from about 25 feet. The officers indicated that the street lighting was good and that they were able to see the defendant's features clearly. Officer Chapman later identified the defendant as he was escorted into the police station by two other officers. Officer Janz also identified the defendant at the Detective Bureau approximately five hours after the incident. Neither Officer Chapman nor Officer Janz viewed the lineup.

There is no evidence that any of the three victims saw the defendant in custody prior to viewing the lineup. Defendant testified that he saw the victims when he was being transported from one police station to another for the lineup, however, the victims testified that they did not see the defendant after he had fled from the scene until they identified him in the lineup. The pertinent question is whether the victims saw the defendant in custody prior to viewing the lineup. Whether or not the defendant saw the victims has no bearing on the issue of suggestiveness of the identification procedure. The same is true of any opportunity the victims may have had to see the defendant after the lineup identification. Events occurring after the victims viewed the defendant could not have influenced the identification process during the lineup.

■ In answer to defendant's claim that the witnesses' emotional states rendered them incapable of making an objective identification, it is only necessary to state that unless a witness has been rendered insensible his testimony is not incompetent merely because he witnesses upsetting events about which he is testifying. The witnesses' condition, mental or physical, goes to the weight of his testimony by the fact finder and not to the testimony's admissibility. *State v. Pflugradt,* 463 S.W.2d 566, 570 (Mo.App.1971).

■ The suggestiveness of the lineup identification turns on such factors as the opportunity of the witnesses to observe the defendant during the crime, the accuracy of the descriptions, the certainty of the witnesses at the lineup, the length of time between the crime and the confrontation and the need for police to determine at the earliest opportunity whether the person suspected is the person sought. *State v. Hudson,* 508 S.W.2d 707, 710 (Mo.App.1974).

■ All the witnesses, particularly the victims, had ample opportunity to observe the defendant. Their descriptions accurately portrayed the defendant, and the victims positively identified the defendant in a lineup of three other men of similar appearance. The defendant was identified in the lineup shortly after he was apprehended. All factors considered it cannot be said that the lineup identification was in any way suggestive. It follows that because the lineup was not suggestive it could have in no way tainted the in–court identification of the defendant.

We rule the defendant's second point against him.

■ Defendant raises as his third point the contention that the trial court erred in overruling his motion in limine and admit-

ting into evidence testimony concerning the rape of the woman. We do not quarrel with appellant's contention that introduction of evidence of unrelated crimes is generally reversible error. *State v. Brunson*, 555 S.W.2d 359, 361 (Mo.App.1977). In the present case, however, the alleged rape of the woman by Lee Beal could hardly be considered an unrelated crime. The defendant, during the ride in the victim's automobile, placed his arm around the woman and forced her to kiss him. The defendant told the woman that "he had never had a white bitch before and that he was going to save (her) for later; he was going to take (her) somewhere else ... some place nice ... and she was going to like it." While the defendant was kissing the woman, Roberts and Beal were touching her and unzipping her pants. The defendant then ordered Mr. Welby to drive into an alley whereupon Beal raped the woman. The acts of third parties are admissible where such acts are so closely connected with the crime charged as to constitute part of the res gestae and tend to elucidate a main fact in issue. *State v. Talbert*, 454 S.W.2d 1, 3 (Mo.1970). Here the rape by Beal was one in a series of crimes contemporaneously perpetrated by the defendant and his cohorts, evidence of which contributes to an explanation of the assaults. In any event defendant could have suffered no prejudice from the introduction of the evidence of the alleged rape by Beal because there was no danger that the jury could have inferred that the defendant was the perpetrator.

The Missouri Supreme Court has recently reaffirmed its conclusion that conviction of armed criminal action and of the underlying felony constitutes a violation of the rule against double jeopardy. *Sours v. State*, 603 S.W.2d 592 (*Sours II*) (Mo. banc 1980). Although defendant does not complain of double jeopardy on appeal we are bound by the mandate of *Sours II* and must, therefore, reverse the defendant's conviction for armed criminal action and the 10 year sentence assessed therefor. The conviction of robbery first degree and two counts of assault with intent to kill without malice are affirmed.

The judgment is affirmed as modified.

REINHARD and CRIST, JJ., concur.