**STATE of Missouri, Respondent,**

v.

**Robert WHITE, Appellant.**

**No. WD 33268.**

Missouri Court of Appeals,
Western District.

March 15, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 3, 1983.

Application to Transfer Denied June 30, 1983.

Elwood L. Thomas and Anne E. Goos, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kristie L. Green, Theodore A. Bruce, Asst. Attys. Gen., Jefferson City, for respondent.

Before DIXON, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

Appellant Robert White was convicted upon jury trial of two acts of forcible sodomy, § 566.060, RSMo (Supp.1982), upon one Alexander Samuels. He was sentenced to 15 years' imprisonment on each count, to be served concurrently.

He has appealed to this court with four points.

■ Appellant first challenges the sufficiency of the evidence to make a submissible case against him. The jury submission was upon the hypothesis that defendant himself committed the punishable act, not as an aider or abettor. His claim is that, though the evidence is sufficient to show his individual personal act of sodomy upon the victim, there is no evidence that he himself engaged in any acts or threats which would constitute "forcible compulsion."

In order to prove a submissible case of appellant's acting alone, the state must show (appellant argues) that the "forcible compulsion" was his individual act. "Forcible compulsion" includes "[a] threat, express or implied, that places a person in reasonable fear of death [or] serious physical injury." MAI–CR2d 33.01; § 556.-061(11), RSMo 1978.

The facts were as follows:

The victim, Alexander Samuels, was an 18-year-old youth serving a 90-day sentence in the Jackson County jail for stealing. He was in a cell which contained also the defendant White and three other prisoners, Anthony Berry and Maurice Clay and Shea Jackson. On the night of January 19, 1981, Anthony Berry told defendant to "stay up late." Defendant White was present. Samuels did not know "exactly" what Berry meant. As Samuels was lying in the upper bunk, after 10 o'clock and after the lights had been turned out, he said he was going to sleep. Appellant White told him, according to Samuels' testimony, "no, I wasn't." Berry told him to come down from the upper bunk. Samuels demurred. Berry then got up and told him to come down or they would drag him off his bunk. Samuels complied. Another prisoner "an old man" told him "not to try anything because they had too many friends in there." He was subjected to oral and anal sodomy by Berry. Appellant White supplied Berry lubricant for the anal sodomy. Samuels testified that he was scared. He testified that "both of them"—Berry and appellant White—had made threats to him that "if I snitched they both would get me before I left the tank." After Berry had completed anal sodomy upon Samuels, appellant White told Samuels to "stay down there," and he then proceeded to subject Samuels to the same indignity.

On the following night, both Berry and appellant White, along with another prisoner, subjected Samuels to anal intercourse once again. Samuels testified that he submitted because he was "scared.... [o]f getting whipped." White and the others repeated their threats to "get me before I left out of the tank if I snitched."

## I

Appellant, in support of his proposition that in order to convict him of sodomy as his personal act, that the evidence must show his personal participation in the antecedent forcible compulsion phase, points to an alleged lack of direct testimony of appellant's personal threats or participation in others' threats against the victim Samuels. Appellant in his brief states his position as follows:

Because the state chose to submit on the theory that appellant acting alone committed all the necessary elements of the offense charged rather than on a theory of appellant as an active participant or aide, it bore the burden of presenting clear and substantial evidence from which the jury could find beyond reasonable doubt that *appellant acting alone in fact committed each and every act submitted* in the verdict directing instructions, including, in this case, that appellant acting alone used forcible compulsion.

Defendant cites *State v. Dayton,* 535 S.W.2d 469 (Mo.App.1976), where sodomy was submitted to the jury as the defendant's individual act, when there was actually no evidence identifying the defendant as the person who committed the ultimate act of sodomy. It was held that the evidence was insufficient to submit the case upon the hypothesis that defendant himself committed the act, even though the evidence was sufficient to prove that he aided and abetted the offense. 535 S.W.2d at 491. There is no question in the evidence in the case before us that defendant White personally, both on the first night and the second, did commit the ultimate act of sodomy upon Samuels. The *Dayton* case does not help defendant.

Defendant cites also *State v. Gray,* 497 S.W.2d 545 (Mo.App.1973). That case stands for the proposition that, for one to be guilty of rape upon a woman who submits because of a third person's threat of physical violence, he must know of the threats so as to know she is not submitting by consent. 497 S.W.2d at 549.

The threats of physical violence in this case, or Samuels' testimony of the threats, are not articulated with precise definition. The circumstances must be taken into account. Samuels' youth (he was 18 at trial time, and could have been 17 at the time of the attack) outnumbered and overmatched in age and strength by his attackers. In such circumstances it was not necessary that the consequences to Samuels of his resistance be spelled out. Furthermore, there is plenty of evidence of White's participation in the antecedent threatening phase of the offense. Notice Samuels' testimony that "both of them"—Berry and appellant White—had threatened him that they would "get him" if he snitched on them. The jury could believe also that White was close by when Berry ordered Samuels to come off his bunk or "they" would drag him off. White was on hand to supply lubricant to Berry. It was White who accompanied Samuels to breakfast the next morning after the first incident—to assure, according to Samuels' interpretation, that he would not report the incident.

We hold that there was sufficient evidence of defendant's personal participation and also of his knowledge of the "forcible compulsion" to justify submission of defendant's offense as his individual act. *State v. Miller,* 604 S.W.2d 702, 708 (Mo. App.1980); *State v. Davis,* 557 S.W.2d 41, 43–44 (Mo.App.1977).

## II

For his second point, defendant claims the court erred in admitting testimony of Berry's and Clay's statements to Samuels, and also in admitting evidence of their sodomizing Samuels. Appellant says that testimony of their statements and of their acts were inflammatory and prejudicial.

We find, however, that the evidence was admissible, even necessary. Their acts and statements were so closely connected with the crime charged as to constitute a part of the res gestae, and tended to throw light upon the defendant's own acts. *State v. Talbert,* 454 S.W.2d 1, 3 (Mo.1970); *State v. McCreuiston,* 608 S.W.2d 460, 464 (Mo.App.

1980). In fact, to edit out the statements and the acts of Berry and of Clay would leave the jury completely in the dark as to whether White's acts of anal sodomy were with Samuels' consent or were coerced. In *State v. Parr,* 296 Mo. 406, 246 S.W. 903, 905 (1922), the court said, in language appropriate to the present case:

> Where, as here, two crimes are committed under such circumstances as to constitute one continuous transaction in the accomplishment of a common design, and the facts are so interrelated that the crimes are concurrent, proof of one cannot be made without a showing of the facts tending to establish the other. In short, the entire otherwise relevant facts may be regarded as part of the res gestae. (Citations omitted). Without their admission, a connected and intelligible statement of the transaction could not well be made nor a clear understanding had of the same.

See also *State v. Shumate,* 478 S.W.2d 328, 330 (Mo.1972); *State v. McCreuiston,* supra; *State v. Mazzeri,* 578 S.W.2d 355, 357 (Mo. App.1979).

### III

■ For his third point, defendant complains of the court's failure to give instructions based on MAI–CR2d 2.10 and MAI–CR2d 2.12. The Notes on Use, as defendant reminds us, say that said instructions "must be given, whether requested or not, when there is any evidence that the defendant acted with others, either as an active participant or one who aided, agreed to aid, or attempted to aid another in planning, committing or attempting to commit an offense." Appellant reminds us also that failure to give an instruction required by MAI–CR2d and the applicable Notes on Use is presumptively prejudicial unless the state can clearly demonstrate the contrary. *State v. Williams,* 611 S.W.2d 26, 29 (Mo. banc 1981). Appellant acknowledges that it is our duty to determine whether the failure to give such instructions in this case was actually prejudicial. We hold that the failure to give such instructions was not prejudicial. The state in submitting the

case upon the hypothesis of the defendant's personal commission of the offense assumed a greater burden than it would have upon the aider or abettor hypothesis. The state assumed the burden of proving that the appellant's acts alone satisfied all the elements of the offense. Narrowing the basis for conviction operated to the appellant's advantage and thus was harmless error. *State v. Murray,* 630 S.W.2d 577, 580 (Mo. banc 1982); *State v. Tolson,* 630 S.W.2d 611, 613 (Mo.App.1982).

### IV

■ Finally, as a separate point, appellant urges that the cumulative effect of the alleged errors in the first three points call for a reversal of the defendant's conviction. He cites no cases on this point. It might be in some cases that the cumulative effect of errors, none of which by itself would constitute prejudicial error, might add up to reversible error. But though that might be so in another case, in this case we find no accumulation of error which might be prejudicial to defendant.

The judgment is affirmed.

All concur.