**STATE of Missouri, Respondent,**

v.

**Jimmie Lee WEEKLEY, Appellant.**

**No. 62156.**

Supreme Court of Missouri,
Division No. 2.

Sept. 8, 1981.

Rehearing Denied Oct. 13, 1981.

Shaw, Howlett & Schwartz, Charles M. Shaw, James J. Knappenberger, C. Clifford Schwartz, Clayton, for appellant.

John Ashcroft, Atty. Gen., Jay Haden, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Jimmie Lee Weekley, appellant herein, was found guilty by a jury of murder in the second degree. The jury was unable to agree on the punishment, and the court assessed the punishment at life imprisonment.

Appellant does not challenge the sufficiency of the evidence. We need to state only that a jury reasonably could find that on June 17, 1978 appellant shot his estranged wife with a shotgun causing her death.

By his first point appellant asserts the trial court committed prejudicial error when at the request of the State it struck for cause John Tracy, a member of the jury panel.

We need not set forth the precise questions and answers, but during the voir dire

examination venireman Tracy clearly indicated that he was not favorably disposed towards sending a defendant to prison, and that the evidence would have to be "awful strong" before he would do so. He also stated that "if [he] thought there was any doubt at all [he] wouldn't convict him," and that he did not "feel * * * qualified to sit in judgment on another man's life or even a few years of his life, and if it wasn't pretty well cut and dry, * * * [he] wouldn't convict him."

In determining the qualifications of a prospective juror, the trial court has very wide discretion, and the court's ruling will not be disturbed on appeal unless it is clearly against the evidence and constitutes a clear abuse of discretion. *State v. Jones*, 384 S.W.2d 554 (Mo.1964); *State v. Treadway*, 558 S.W.2d 646 (Mo. banc 1977). We should also keep in mind that the trial court is in a better position, by reason of its presence and personal observation, to determine the validity of a challenge for cause than is an appellate court when reviewing the record. *State v. McGrew*, 534 S.W.2d 549 (Mo.App.1976); *State v. Harris*, 425 S.W.2d 148 (Mo.1968). The challenged venireman clearly indicated a misconception of his duties as a juror, and he also expressed a substantial doubt as to his willingness or ability to follow the law as declared by the court in its instructions. In these circumstances there was no abuse of discretion on the part of the trial court in sustaining the State's challenge for cause.

Aside from the above, this is a case where a venireman was excused from the jury; not where it is contended that a disqualified venireman was kept on the jury panel. "When the action complained of is the striking of a juror, an appellant is not entitled to relief unless he can show that the jury finally empaneled was not impartial." *United States v. Young*, 553 F.2d 1132 (1977); cert. den. 431 U.S. 959, 97 S.Ct. 2686, 53 L.Ed.2d 278 (1977).[1] See also *State v. Mathis*, 52 N.J. 238, 245 A.2d 20 (1968); *United States v. Burgard*, 553 F.2d 190 (8

Cir. 1977); *United States v. Marshall*, 471 F.2d 1051 (D.C.Cir.1972). There is nothing in the record to show, and appellant does not contend, that the jury as finally constituted was not composed of competent, qualified, and unbiased jurors. See *State v. Allison*, 300 S.W. 1069 (Mo.1927). We find no merit to appellant's first point.

The offense of which appellant was charged occurred on June 7, 1978. By his second point appellant contends that prejudicial error resulted from the giving of Instruction No. 1 which followed precisely the language of MAI–CR 2.01. That instruction was changed effective January 1, 1979 and appellant's trial occurred thereafter. He now contends that it was prejudicial error not to give the instruction as set forth in MAI–CR2d 2.01.

We consider this contention to have been ruled by *State v. Williams*, 611 S.W.2d 26 (Mo. banc 1981); *State v. Lute*, 608 S.W.2d 381 (Mo. banc 1980); and *State v. Jones*, 604 S.W.2d 665 (Mo.App.1980). We see no occasion to here set forth again the reasoning of those cases. It is sufficient to say that the effect of those rulings is that the two instructions are almost identical, and the only changes pertain to use in MAI–CR 2.01 of the indefinite masculine pronoun (such as "he" and "his") in referring to witnesses. No reasonably intelligent juror could have been confused by use in this case of MAI–CR 2.01.

By his third point appellant asserts error resulted when the trial court overruled his objections and his motion for a mistrial when the State asked appellant on cross-examination about any history of "black-out periods." He asserts that this was "entirely irrelevant and immaterial" and was beyond the scope of the direct examination.

On direct examination appellant testified as to his activities prior to the shooting. He stated that his wife was in the mobile home and he went in and laid down on the couch, and the "only thing I know it just got dark because something right here left a hole

---

1. The special rule established by *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) is applicable only in death cases, and does not affect cases such as this.

and everything got dark." On cross-examination he was asked if he felt anything hit his head, and he replied, "Everything just got dark." He was then asked whether he had any of "these blacking out periods before?" At a bench conference appellant objected to the question "as beyond the scope of the examination in chief." The court commented that appellant had previously said "everything went dark," and it stated that it would "allow the State a little latitude in going into that." Appellant's motion for a mistrial was denied. The following then occurred:

"Q. (BY MR. STEVENSON, [the prosecutor]:) Did you have any of those black-outs before?

"A. I was just trying to think. Back in '71.

"MR. SHAW: Aw, Judge, I object to this. This is far too remote in time and beyond the scope of examination in chief. There's certainly no relation or connection whatsoever to this case to this blow on the head.

"THE COURT: Overruled.

"Q. (BY MR. STEVENSON:) You say 1971?

"A. I had a nervous breakdown, but I didn't. The doctor—

"MR. SHAW: May we approach the bench?

"THE COURT: Yes you may.

(THE FOLLOWING PROCEEDINGS WERE HAD AT THE BENCH BETWEEN COURT AND COUNSEL OUT OF THE HEARING OF THE JURY:)

"MR. SHAW: Defendant's going to object to this, ask that it be stricken as non responsive to the question as beyond the scope of examination in chief. I'm going to ask the jury be admonished to disregard that.

"THE COURT: All right. We will order the last part of the answer stricken and the jury will be instructed to disregard it.

(THE FOLLOWING PROCEEDINGS WERE HAD WITHIN THE HEARING OF THE JURY:)

"THE COURT: Members of the jury, the last portion of that answer will be stricken and you will be instructed to disregard that answer.

\* \* \* \* \* \*

"Q. (BY MR. STEVENSON:) In 1971 did you have black-outs then?

"A. No, sir; not till the doctor put me on—

"MR. SHAW: Judge, object to this as again immaterial and irrelevant, not germane to any issues in this case.

"THE COURT: All right. We'll overrule the objection.

"MR. SHAW: And ask the jury be discharged and a mistrial declared.

"THE COURT: We'll deny the request for a mistrial.

"Q. (BY MR. STEVENSON:) Now, did you ever have any of those black-outs?

"A. Well, I don't know how to answer it now.

"Q. Well, did you—have you ever had these black-outs before?

"A. I don't know how to answer it now. I don't, really don't. Could I come up and talk to you, sir?

"THE COURT: You just answer the questions the best you can, Mr. Weekley.

"Q. (BY MR. STEVENSON:) Probably could answer with a yes or a no. Did you ever have any of these before?

"A. Not till '71. I had a nervous breakdown.

"MR. SHAW: See, Judge, you already—you see what we get into? I object to this, ask that it be stricken, the jury admonished to disregard it.

"THE COURT: All right.

"MR. STEVENSON: Your Honor—

"MR. SHAW: Mistrial declared.

"THE COURT: We'll deny the request for mistrial. We'll overrule your objection. Ask your next question, Mr. Stevenson.

"Q. (BY MR. STEVENSON:) Mr. Weekley, are you saying that you in fact had black-outs before this period?

"MR. SHAW: Judge, that is not what he said. Now, that's, a direct misquotation of what evidence we have.

"THE COURT: All right. Is there an objection?

"MR. SHAW: Yes, sir. I object to the form of the question.

"THE WITNESS: I just—

"THE COURT: Just a second, Mr. Weekley. Overrule the objection. If you can answer the question please answer the question, Mr. Weekley.

"A. Well, I can't without going into what everything.

"THE COURT: Well, let's move on Mr. Stevenson."

▮▮▮ What then followed pertained to other matters. The extent of cross-examination rests largely in the discretion of the trial court and an appellate court is not to interfere unless that discretion is abused. *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979). We consider appellant's testimony that immediately before the shooting "it just got dark" to have been a reference to what is commonly called a "black-out." In the cross-examination of a defendant who testifies in his own behalf the prosecution is not confined to a categorical review of the evidence given by defendant on direct examination but may examine him in detail as to matters generally referred to in his examination in chief. *State v. Murphy*, 592 S.W.2d 727 (Mo. banc 1979). If during direct examination a defendant refers in a general way to a subject, he may then be cross-examined in detail on that subject, and particularly to obtain the full and correct meaning of what was previously said in only a general way. *State v. Dalton*, 433 S.W.2d 562 (Mo.1968). For these reasons the cross-examination did not go beyond the scope of the direct examination, and we do not consider the questions to be irrelevant or immaterial. It is impossible to lay down definite rules as to the scope of cross-exam-

ination of a defendant, but each case is very much dependent on its own facts. *State v. McClinton*, 418 S.W.2d 55 (Mo. banc 1967). We find no abuse of discretion in this case, *State v. Thompson*, 472 S.W.2d 351 (Mo. 1971), and for that reason no mistrial was justified under the circumstances.

Appellant's final point is that the trial court abused its discretion in admitting over his objection Exhibits 14 and 16 which were photographs showing portions of the body of the deceased. He asserts that they "were gruesome, vile and extremely inflammatory * * * [and] wholly irrelevant for any purpose."

These exhibits were both black and white photographs. Exhibit 14 shows a portion of the victim's body covered by a blanket with her left arm protruding with an ample amount of what appears to be blood on the floor and with spattering of blood on the arm. Also, on the arm was what was described as "wadding," apparently from the shotgun shell. Exhibit 16 was described as reflecting the picture of the victim after the blanket and a pillow was removed. It shows only a part of the head, the left shoulder, and that part of the arm shown in Exhibit 14.

▮▮▮ The trial court is afforded broad discretion in determining the admissibility of demonstrative evidence, such as a photograph, and the admission of such evidence is error only upon a showing of an abuse of discretion. *State v. Burnfin*, 606 S.W.2d 629 (Mo.1980); *Holtkamp v. State*, 588 S.W.2d 183 (Mo.App.1979). A photograph, generally speaking, is superior to words as a means of description, *State v. Blair*, 531 S.W.2d 755 (Mo.App.1975), and it should not be rejected because by presenting an accurate portrayal it tends to be inflammatory. *State v. Swenson*, 551 S.W.2d 917 (Mo.App. 1977); *State v. Burnfin, supra.*

▮▮▮ Appellant entered a plea of not guilty, and the State therefore had the burden of convincing the jury beyond a reasonable doubt as to each and every element of the charged offense, *State v. Mullen*, 528 S.W.2d 517 (Mo.App.1975), which in this

case included the fact that appellant caused the death of his wife by shooting her and also that he intended to take her life. Demonstrative evidence which tends to establish any fact in issue or throw light on the controversy and aid the jury in arriving at a correct verdict is admissible.

█ We have viewed the two exhibits. Neither is any more gruesome than any photograph would be which accurately showed a portion of the body of a person who was shot at very close range by a shotgun. See *State v. Jones*, 515 S.W.2d 504 (Mo.1974). In so far as the two photographs tend to be shocking or gruesome, it is because the crime is one of that sort. *State v. Duisen*, 428 S.W.2d 169 (Mo. banc 1967). But even so, we cannot escape the conclusion, from a personal point of view, that the verbal description contained in the record which was given by witnesses of the scene was more inflammatory or shocking than a view of the photographs. The photographs corroborated, and enabled the jury to better understand the testimony of those witnesses who described the scene, even though their description was more vivid. Also, there was no testimony of an expert nature as to the cause of death, and the photographs clearly tended to establish that. Finally the presence of "wadding" indicated the closeness of range, and that was material to the issue of intent. We find no abuse of discretion in the admission into evidence of the two photographs.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

WELLIVER, P. J., and HIGGINS, J., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

SEILER, Judge, concurring in result.

In dealing with defendant's claim that the trial court erred in overruling his objections to the cross-examination about blackouts, a more detailed statement of certain facts is required than that provided by the principal opinion. The facts are that defendant suffered two severe head wounds: one destroyed the lower portion of his face and one left a hole in his forehead. Defendant did not regain consciousness for several days and was hospitalized for more than ninety days. The sheriff testified that when he arrived at the scene he found defendant at the door of the trailer with "the lower portion of his face blown off", his shirt and trousers drenched in blood. Defendant's testimony was that after talking to his wife he lay down on a couch and the next thing that happened that he knew about was "[o]nly thing I knew it just got dark *because something right here left a hole* and everything and got dark" (emphasis supplied). The quoted statement obviously refers to the defendant's inability to see and his loss of consciousness by reason of his wounds. Defendant was referring to the blow which tore off half his face (it was a blast from the shotgun). No doubt this did cause everything to get "dark."

I disagree with the conclusion of the majority that the defendant's statement refers to a "blackout" and thus opened the door for cross-examination about whether defendant had ever had "blacking out periods" before. Even if defendant had had episodes of blacking out sometime during his life, this fact would have no relation to losing consciousness or things becoming dark by reason of having half of his face blown away.

Although it is difficult to fathom why the prosecutor pursued the "blackout" cross-examination, particularly since defendant was not relying on the defense of not guilty by reason of mental defect, whatever the reason, there was no justification for the cross-examination. The undisputed evidence was that defendant's unconsciousness on this occasion was due to his severe head wounds, not recurring "blackouts."

The court finally shut off this irrelevant and immaterial line of inquiry by directing the prosecutor to "move on". The irrelevant questions probably did not play any

decisive part in the outcome of the case and I therefore am willing to concur in result, but the questions were irrelevant and immaterial, without any foundation, and the objections of defense counsel thereto should have been sustained.