**STATE of Missouri, Respondent,**

v.

**Richard Steven ZEITVOGEL, Appellant.**

**No. WD 34604.**

Missouri Court of Appeals,
Western District.

June 21, 1983.

Motion For Rehearing and/or Transfer to Supreme Court Overruled and Denied
Aug. 2, 1983.

Application to Transfer Denied
Sept. 20, 1983.

William M. Barvick, Jefferson City, for appellant.

John Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and WASSERSTROM and MANFORD, JJ.

MANFORD, Judge.

This is a direct appeal from a judgment entered in accordance with a jury conviction for capital murder in violation of § 565.001, RSMo 1978. The jury imposed a life sentence without eligibility of parole until a minimum of fifty years is served. This court has jurisdiction of this appeal by amendment to the Missouri Constitution, Art. V, § 3 (effective December, 1982). *State v. Martin,* 644 S.W.2d 359 (Mo. banc 1983). The judgment is affirmed.

Prior to setting forth the pertinent facts and considering errors alleged, it is noted that the file on appeal contains two appellant briefs. These dual briefs show filing dates of January 12, 1983 and January 13, 1983 respectively. The first brief in time appears to be filed pro se and the second is filed by counsel. For purposes of disposition of this appeal, the points presented by the dual briefs are addressed collectively without specific reference to either brief.

The errors charged are so numerous and in most instances so lacking in clarity that it is impossible for this court to determine if there is a direct challenge to the sufficiency of the evidence as a whole. In light of this briefing deficiency, this opinion recaps the necessary pertinent facts upon the record.

In combination, the dual briefs present 17 alleged errors. By review of this total and by cross-checking, this number is reduced to 11, as six points between the dual briefs are repetitious.

In summary, appellant charges the trial court (1) committed plain error by admitting a photo of him nude from the waist up, because the photo was not relevant to any disputed issue, was inflammatory and prejudicial, and these features outweighed any probative value; (2) committed plain error by admitting an autopsy photo of the victim, because said photo was inflammatory

and prejudicial, and these features outweighed any probative value; (3) erred in admitting (over objection) other photos of the victim, because said photos were inflammatory and prejudicial, and these features outweighed any probative value; (4) committed plain error by admitting a series of photos showing bloodstained floors and stairs, because said photos were inflammatory and prejudicial, and these features outweighed any probative value; (5) committed plain error by admitting hearsay evidence of a witness; (6) committed plain error by ordering appellant and defense witnesses placed in restraints during trial; (7) committed plain error in the submission of an instruction; (8) committed plain error by overruling appellant's motion for acquittal to the charge of capital murder, because the state failed to prove premeditation and deliberation; (9) committed plain error by refusing to acquit appellant at the close of all the evidence, because the state failed to refute appellant's special defense, to wit, self-defense; (10) erred because appellant was denied effective assistance of counsel; and (11) erred in allowing evidence of other crimes which did not tend to prove any element of the crime with which appellant was charged.

The record reveals the following pertinent facts. Appellant, the victim John McBroom, and one Frank Guinan (who was a co-indictee of appellant) were, at the time of this offense, inmates in the Missouri Penitentiary in Jefferson City, Missouri. At about 10:30 a.m. on January 25, 1981, a duty guard, Frederick Matthias, noticed unusual inmate activity in the area where this murder occurred. Inmates Cleveland, Hewitt and Sherill had gathered in an area where they normally would not be, and they were watching the guardhouse occupied by Matthias. Inmates Cleveland and Hewitt repeatedly requested that Matthias ring the buzzer "for mainline [lunch] early".[1] This was denied by Cleveland and Hewitt. During this same time, Matthias had observed appellant and Guinan make several trips

from the lower cell block area (where their cell was located—they were cellmates) to the second level of the cell block where McBroom's cell was located. Approximately at the time appellant and Guinan made their last trip to the second level, inmate Cleveland again requested Matthias to sound the mainline buzzer early. Matthias testified that the sounding of the buzzer would have produced massive inmate traffic and noise in the area. Matthias also had observed McBroom's cellmate, Houchins, leave the McBroom/Houchins cell (Cell 36) unusually early that day.

Because of all of this observed activity, Matthias called his captain, Robert Borghardt, who in turn called Lieutenant Wyrick and instructed Wyrick to meet him in the area. Moments after calling Borghardt, Matthias observed appellant and Guinan exit McBroom's cell. Both appellant and Guinan were covered with blood, and both were armed with knives. Appellant and Guinan observed Matthias looking at them, and both ran to the next level of the cell block. At this time, Borghardt and another officer, McDaniel, arrived in the area. Appellant and Guinan were engaged in a confrontation with another inmate, Camilio, who was also armed with a knife. Borghardt and McDaniel attempted to break up the confrontation between appellant, Guinan, and Camilio. At this point, Matthias observed McBroom, covered with blood, exit his cell. Meanwhile, the attempt at breaking up the appellant, Guinan, and Camilio confrontation continued. Borghardt told the three to give up their weapons, and Camilio stated, "You get their weapons, I'll give you mine." Guinan told Borghardt, "Get out of the way"; he also said to Camilio, "Going to get you like we did your snitching buddy." The evidence further reveals that Guinan stated, "Well we got him, now we are going to get you," while he [Guinan] was looking at Camilio. During this activity, appellant pointed his knife at McDaniel and told McDaniel to "get back".

---

1. *Mainline* is a prison term referring to the time when all inmates are fed. The buzzer sounds throughout the entire prison.

The evidence further reveals that appellant and Guinan then observed Camilio's cellmate, Medley, and while looking at Medley, appellant stated, "There is another one of the snitches." There also was evidence that appellant stated, while looking at Medley, "That is the other snitching punk mother fucker." Both appellant and Guinan then ran toward Medley. Borghardt pursued Guinan, appellant pursued Borghardt, and McDaniel pursued appellant. When Guinan reached Medley's presence, he tried to stab Medley. Medley defended himself against Guinan's attack by using a box fan. Borghardt caught up with Guinan and restrained him with a bear hug. As Borghardt and Guinan struggled, Medley ran. Wyrick arrived at the scene, and Camilio surrendered his weapon to Wyrick. Guinan attempted to free himself from Borghardt's grasp, while attempting to stab Borghardt. Borghardt called for assistance from Wyrick. In the meantime, appellant had gotten behind Borghardt and told Borghardt, "Turn him [Guinan] lose [sic] or I'll kill you, you fat son-of-a-bitch." At this time, appellant raised his knife to stab Borghardt, but was restrained by McDaniel. McDaniel and other officers then subdued appellant and disarmed him. Borghardt subdued and disarmed Guinan.

Other evidence for the state included testimony of Dr. Carl Baker, Chief Medical Officer for the penitentiary, which included his observation of McBroom's body. Baker stated that he observed 16 stab wounds. Some two hours after Baker's examination, McBroom's body was observed by Dr. Ray Doerhoff, Chief Surgeon for the penitentiary. Doerhoff testified to the multiple stab wounds. Dr. Fred Handler, a pathologist, performed an autopsy on McBroom's body. Handler testified to the multiple stab wounds, and as to the cause of McBroom's death stated, "In my opinion he bled to death from the multiple stab wounds."

A penitentiary investigator testified concerning his investigation of the crime scene. Photos secured in that investigation were admitted (over objection) into evidence. Another investigator physically examined appellant some four hours after the incident in question. This investigator testified he observed no visible wounds upon appellant, and appellant made no complaint of injury and did not require or request any medical attention. A photo, taken at the time of the investigation, and showing appellant nude from the waist up, was admitted into evidence.

Appellant called eleven inmate witnesses. In summary, these witnesses testified to having observed the victim McBroom with a pair of scissors on the day of the murder. Some of these witnesses testified McBroom told them he was going to kill Guinan and appellant. Others testified they overheard McBroom telling others of his intention to kill Guinan and appellant.

Appellant testified on his own behalf. He stated that McBroom called him to McBroom's cell and that when he entered McBroom's cell, McBroom attempted to stab him. Appellant further stated that in self-defense, he disarmed McBroom and killed him.

Because one of the inmate witnesses testified the prosecutor promised to help the witness on his own sentence in exchange for favorable testimony, a rebuttal witness was called to refute this allegation.

The evidence closed. The jury returned its guilty verdict. The second phase, as to punishment, of our bifurcated system in capital proceedings was conducted, and upon completion the jury assessed as punishment against appellant a life sentence without eligibility of parole until a minimum of 50 years is served. This appeal followed.

Under his point (1), appellant charges the trial court committed plain error in admitting a photo of appellant (nude from the waist up), because said photo was degrading to appellant, was inflammatory because it showed a tatoo depicting a Nazi swastika and a symbol of "white power", and did not relate to any disputed issue; the probative value of the photo was outweighed by its inflammatory and prejudicial effect.

■ Our review of this alleged error is under Rule 29.12(b), the plain error rule, because of appellant's failure to present the alleged error in his motion for new trial. *State v. Harris,* 620 S.W.2d 349, 354 (Mo. banc 1981). The admissibility of demonstrative evidence, such as photos, is within the discretion of the trial court, and a ruling thereon will not be disturbed absent a showing of an abuse of that discretion. *State v. Weekley,* 621 S.W.2d 256, 260 (Mo. 1981), *State v. Burnfin,* 606 S.W.2d 629, 630 (Mo.1980).

Appellant's contention, that the photo of himself nude from the waist up was degrading, is nothing more than a self-declared conclusion without any substance. His contention that the photo revealed a Nazi swastika and "white power" tatoo is obviously nothing more than an afterthought conjured up for purposes of submitting this claim on appeal. There is nothing upon this record which even remotely suggests any attention was drawn to the tatoo, nor was any reference made thereto so as to suggest the jury's attention was drawn to it.

■ Appellant further claims the photo should not have been admitted because it did not relate to any disputed issue. What appellant suggests is that there was no dispute as to whether he received any physical injury. Appellant attempts to draw the issue too narrowly. What was in issue was his claim of self-defense. He testified that when he entered McBroom's cell, McBroom attempted to stab him. In addition, the state called as a witness an investigator who testified that some four hours after the murder he physically examined appellant. The photo was admissible in support of the investigator's testimony.

■ Appellant suggests since he admitted to having no injury there was no dispute. As noted above, the issue of self-defense remained throughout the entire proceedings. Appellant's admission of no injury, standing alone, does not render the photo inadmissible. *State v. Holmes,* 609 S.W.2d 132, 135 (Mo. banc 1980), *State v. Townes,* 522 S.W.2d 22, 25 (Mo.App.1974).

The evidence indicated the victim, McBroom, had been stabbed 16 times. The photo, coupled with the investigator's testimony regarding appellant's physical condition (lack of injury), was properly admitted to compare the extent of injuries to McBroom with the lack of injury to appellant—to refute appellant's claim of self-defense. The extent of injury to the victim is inconsistent with appellant's claim of fighting for his life against McBroom's attack, during which he killed McBroom.

■ It is the rule that photos tending to establish any fact in issue, or which tend to aid a jury in arriving at a correct result, are admissible. *Weekley* at 261, *Burnfin* at 630.

The questioned photo did relate to a disputed issue, to wit, self-defense. The photo was not degrading to appellant, particularly when the whole record is reviewed, including appellant's explicit account concerning an alleged homosexual incident between appellant and the victim. The photo accurately displayed appellant's tatoo of a Nazi swastika and a symbol of "white power". No attention was directed to the tatoo or the symbol. The photo was otherwise admissible and as the record shows, was not offered to arouse the emotions of the jury, which is prohibited. *State v. Wood,* 596 S.W.2d 394, 403 (Mo. banc 1980). Simply because appellant contends the photo tends to be inflammatory, it need not have been refused by the trial court. *Weekley* at 260.

The photo was properly admissible for the reasons set forth above. The trial court committed no error, plain or otherwise. There is no merit to appellant's point (1), and it is ruled against him.

■ Under his point (2), appellant contends the trial court committed plain error by admitting an autopsy photo of the victim, because said photo was inflammatory and prejudicial, and these features outweighed any probative value. Our review of this point is for plain error for the same reasons set forth under point (1) above.

The photo challenged by appellant depicted the upper right side of the victim's body,

and showed an incision made by the examining pathologist. Appellant claims the photo was inflammatory, and in his argument states, "Argument cannot adequately convey the damage that a picture can do." Appellant then urges that reading of the brief be discontinued, and the picture observed. The court has observed the challenged photo. Appellant then contends that while the photo "was obstensibly introduced to show the location of certain stab wounds ... what does one find to be the aspect which leaves the greatest impression and remains in the memory the longest? We would submit that it is the pathologist's incision." Appellant then concludes by charging that the court abused its discretion in admitting the photo, particularly since wounds of the victim had been shown by other admitted photos.

First of all, the challenged photo was not repetitious of others previously admitted, but in fact showed the victim's body after cleaning for purposes of the autopsy. In addition, the photo was relevant to the testimony of Dr. Handler, the pathologist who performed the autopsy. The photo had probative value relative to this testimony; where photos are "possessed of probative value, they are not necessarily rendered inadmissible because of any cumulative aspect that may attach to them because of other evidence." *State v. Love,* 546 S.W.2d 441, 451 (Mo.App.1976).

The challenged photo was relevant, and possessed probative value upon the matter of proof of the offense charged, capital murder. Further, the photo was relevant and had probative value as regards the issue of self-defense. Appellant, in his testimony, stated that when fighting with McBroom in defense of himself, he was face to face with McBroom. It was established that appellant was right-handed. The photo depicted several stab wounds to McBroom's right side. The photo shows wounds inconsistent with appellant's testimony regarding self-defense.

The trial court did not abuse its discretion in admitting the challenged photo. There was no error, plain or otherwise. Appel-

lant's point (2) is meritless and is ruled against him.

■ Under his point (3), appellant contends the trial court erred in admitting (over his objection) other photos of the victim, because said photos were inflammatory and prejudicial, and these features outweighed any probative value.

The challenged photos depict different views of the victim's body. Appellant acknowledges the applicable rules to the admissibility of such evidence by citing *State v. Sanders,* 619 S.W.2d 344 (Mo.App.1981) (which declares the admissibility of demonstrative evidence is within the discretion of the trial court). *Weekley* and *Burnfin, supra,* and by citing *State v. Garrett,* 595 S.W.2d 422 (Mo.App.1980) which rules such evidence admissible when the probative value outweighs the possible inflammatory effect.

While appellant offers a conclusory argument that the photos were inflammatory and prejudicial, he does not persuade this court that the photos lack relevancy. The challenged photos (a) tended to prove McBroom bled to death from multiple stab wounds (this corroborates the pathologist's testimony as to cause of death), (b) tended to corroborate and aid the jury in understanding the testimony of the two other physician witnesses, and (c) depicted the multiplicity and severity of the stab wounds which were relevant to appellant's claim of self-defense, and had probative value regarding the state's burden to refute the self-defense claim.

■ Appellant's argument that the photos were inadmissible, because testimony had already been admitted which described the conditions of McBroom as depicted in the photos, has no validity. *State v. Jackson,* 499 S.W.2d 467, 472 (Mo.1973), *State v. Moore,* 303 S.W.2d 60, 65 (Mo. banc 1957).

There was no abuse of discretion by the trial court in the admission of the challenged photos. Appellant's point (3) is meritless and is ruled against him.

Under his point (4), appellant charges the trial court committed plain error by admit-

ting a series of photos showing bloodstained floors and stairs, because said photos were inflammatory and prejudicial, and these features outweighed any probative value. Our review of this point is for plain error for the same reason set forth under point (1) above.

Appellant, in part, contends the challenged photos allegedly leave the impression there "was three times as much blood as there was in fact". This court has difficulty in following such contention. The photos have been viewed by this court. There is nothing shown therein that would support such an absurd contention, that the photos leave an impression of three times as much blood as there actually was at the scene.

■ The state presented an investigator witness who testified as to the conditions he found and observed at the murder scene. This witness identified the photos as those taken by him, and that they fairly and accurately depicted the scene. The photos were relevant to corroborate the testimony of the investigator witness. The photos had probative value and could aid the jury in its understanding of the conditions and appearance of the crime scene. *State v. Toney,* 537 S.W.2d 586 (Mo.App.1976). That the photos were shocking and perhaps even horrible does not, in and of itself, render the photos inadmissible. *Moore* and *Weekley, supra.*

There was no error, plain or otherwise, in the admission of the photos depicting the crime scene. Appellant's point (4) is meritless and is ruled against him.

Under his point (5), appellant contends the trial court committed plain error by permitting an investigator to testify on redirect as to a rumor he had heard regarding what might have been the cause of the stabbing of McBroom. Appellant charges that the testimony was hearsay.

■ Our review of this alleged error is under the plain error rule for two reasons. First, appellant entered an improper objection to the testimony, and second, this point was not raised in his motion for new trial. *Harris, supra.*

As part of its case, the state called one Mark Schreiber as a witness. He was an investigator for the penitentiary and a deputy sheriff for Cole County. Appellant challenges a portion of this witness's testimony on redirect examination as hearsay. Since the record reveals that on appellant's cross-examination of this witness, appellant opened up the issue of rumored hearsay, it is necessary to set forth the pertinent portions of the cross-examination of this witness, as well as the challenged portion of his redirect examination. The record reveals the following:

"Q. Mr. Schreiber, in your report, which quite frankly I found very thorough, you are an English major, aren't you?

A. I was at one time.

Q. You graduated with an English degree in college?

A. No.

Q. In your report it is believed that the Inmate McBroom had been making advances toward Inmate Zeitvogel?

A. That was one theory.

Q. Did you find people who told you that?

A. I didn't myself, it was based on other hearsay information.

Q. Where did you get it from?

MR. BROWN: I think I should object if Mr. Allred is trying to induce the witness to repeat rumors, hearsay and not admissible evidence.

THE COURT: Overruled. You may answer if you understand the question.

A. I do, sir.

Q. (By Mr. Allred) Where did you get the basis for this information?

A. This was from other officers and what they heard after this particular incident, sir.

Q. Do you know what the date of your report was?

A. I don't recall.

Q. January 27, 1981.

A. Yes, sir.

Q. Written within two days?

A. Yes, sir.

Q. Of the murder?

A. Yes.

Q. And· at that time you had information to the effect from other officers that advances had been made to Zeitvogel by McBroom?

A. Certainly, those came up on the same day·the incident occurred."

(REDIRECT EXAMINATION):

Q. Were you able to determine what actually was behind the stabbing of John McBroom?

MR. ALLRED: Object to that, asking for a conclusion on the part of the witness, invades the province of the jury to determine what was behind the killing.

THE COURT: Sustained.

Q. (By Mr. Brown) Did you hear another rumor from other guards as to what might have been behind the stabbing of John McBroom?

MR. ALLRED: Object to that question, invades the province of the jury again.

THE COURT: Overruled.

A. Yes, I did.

Q. (By Mr. Brown) What was that that you heard?

A. That the basis of the murder possibly could have been that Inmate Zeitvogel and Guinan owed some money to an inmate by the name of Joe Camilio.

Q. And how do you determine from that information that that explained the death of John McBroom?

A. The rumor was that I received was that (sic) Inmate McBroom was a friend of Joe Camilio's and the individuals involved thought they could get to Camilio by first getting McBroom.

Q. From whom did you get that information?

A. Part of it was from Mr. Armontrout, associate warden at the penitentiary, and part of it was from a statement obtained from Inmate Camilio."

▮ The record reveals that the state did not make the initial inquiry about rumors which indicated the cause for the death of McBroom. This matter was opened by appellant during the cross-examination of Schreiber. By appellant having opened up the issue, he cannot and will not now be heard to complain. It is apparent from the record that the questions asked on redirect were further inquiry into a subject injected into the case by the appellant. By such action, appellant waived his right to object on the basis of hearsay. *State v. Ashley,* 616 S.W.2d 556, 561 (Mo.App.1981). It is further noted that appellant's only objection was "object[ion] to that [question] . . . invades the province of the jury . . . ."

Now, on appeal, he seeks to condemn the trial court for plain error on the basis that the testimony was hearsay. This alleged error does not even track his objection at trial. Further, by opening the subject or issue of "rumors", appellant waived his right to object on the basis of hearsay. *Ashley, supra.*

There is no showing upon this record that the admission of the hearsay testimony, both on cross-examination and redirect examination, had any decisive effect upon the jury in its decision. There is other substantial evidence upon this record to support the charge and the verdict. There was no manifest injustice or miscarriage of justice in admitting the hearsay testimony of the witness.

Because of the circumstances wherein appellant "opened up" the issue, he in fact waived his right to object on the ground that the testimony was hearsay. *Ashley, supra.* The admission of this hearsay testimony was not prejudicial error, because there is no showing that it had a decisive effect on the jury or the verdict. *State v. Mills,* 521 S.W.2d 495, 497 (Mo.App.1975); *Billings v. State,* 503 S.W.2d 57, 60 (Mo. App.1973).

There is no showing of any manifest injustice or miscarriage of justice, and hence, no plain error. Appellant's point (5) is meritless and is ruled against him.

Under his point (6), appellant charges that the trial court committed plain error in ordering him and all of the defense witnesses to be handcuffed at all times, as there

was no showing of any conduct during trial which justified such restraint.

■ Our review of this alleged error is under the plain error rule upon appellant's failure to preserve the same, upon his failure to object at trial and to raise the same in his motion for new trial. *Harris, supra.*

■ Appellant's contention is that his appearance and the appearance of other defense witnesses in handcuffs before the jury conveyed to the jury the trial court's impression that appellant is a dangerous and violent person, and thus prejudiced appellant in the eyes of the jury. He contends that there is nothing upon the record of *this* trial that warranted such restraint. What appellant suggests is that this court view the lack of any misbehavior or danger during the trial as cause to condemn the trial court for plain error upon a decision the trial court faced prior to the trial of this case. Stated another way, the trial court was faced with deciding upon restraints *prior to trial,* and now appellant, after trial, asks the trial court be condemned simply because nothing extraordinary occurred during the trial. It is just as reasonable to conclude that the ordered restraints prevented anything from occurring in the present trial. Instead of speculating about what might have or might not have happened in the absence of restraints, this matter must be reviewed in light of the *known* past behavior of appellant and his witnesses, weighed against the authority of the trial court regarding the conduct of the trial and the safety in the courtroom. The trial judge has the responsibility for the conduct of the trial and the safety of all persons in the courtroom. *State v. Holt,* 603 S.W.2d 698, 703 (Mo.App.1980); *State v. Cleveland,* 583 S.W.2d 263, 269 (Mo.App. 1979).

■ The conduct of the trial, the safety of all persons, and also the prevention of escape are matters which fall within the discretion of the trial court. *Cleveland, supra; State v. Borman,* 529 S.W.2d 192, 194 (Mo.App.1975). The ruling on these matters will not be overturned absent the

showing of an abuse of that discretion. *State v. Duncan,* 542 S.W.2d 576, 577 (Mo. App.1976). Appellant also bears the burden of showing how he was prejudiced by the taking of such actions. *State v. Sallee,* 436 S.W.2d 246, 254 (Mo.1969); *State v. Carter,* 557 S.W.2d 47, 49 (Mo.App.1977).

In the instant case, the trial court was faced with an accused who currently was an inmate in prison, and who had a past record of convictions for rape, armed robbery, assault with intent to kill and escape. As the accused, appellant stood charged with the offense of capital murder. The record also shows the appellant actually called 11 inmate witnesses (appellant had suggested prior to trial that the witness number would be 20–21), and the record shows the following totals of some of the criminal convictions between appellant's 11 defense witnesses: Capital Murder (1); Felony Murder (1); Murder 2nd Degree (2); Rape (1); Felonious Assault (2); Assault (1); Robbery (4); Burglary (5); and Escape (2). It was within the above setting and circumstances that the trial court was required to make its decision. The record shows that this subject was discussed. Appellant's counsel argued for removal of all restraints, and after discussing the matter in more detail and the request for restraint by the state, defense counsel responded:

"MR. ALLRED: I don't know of anybody on the record here who has a record for escaping, and furthermore what he is asking for is not they be properly restrained back in the back, keeping them in cells and everything, I just don't want them appearing before this jury in leg irons and handcuffs, too, handcuffs at the least, I might go along with that, but not leg restraints."

It is noted that appellant's defense counsel was not entirely correct in his statement concerning the offense of escape. It may be correct that counsel did not know of any such offense, but the record, as noted above, shows some of the witnesses and appellant as well, already stood convicted for the prior offense of escape.

In the instant case, there was no record made by appellant as to the unreasonableness of the restraints by the trial court. *Carter* at 49. Appellant was afforded the opportunity to voir dire the jury upon the issue. The record reveals that at no time did the prosecution mention the restraints.

The factors of the history of violent crimes and escape by both appellant and his witnesses, plus the responsibility of the trial court to conduct the trial, consider the safety of all persons in the courtroom, and guard against escape, are all factors which the trial court should have considered (and the record shows that was done in the instant case) in insuring order and safety in the courtroom. *Holt, Cleveland, Carter* and *Borman, supra.*

Although appellant contends to the contrary, what the record truly reveals is that the trial court carefully weighed the necessary facts relative to the orderly conduct of the trial, plus the safety of all in the courtroom; and based upon those facts, took the appropriate action to insure order and safety.

Appellant has failed to show how the trial court's action of restraining appellant and his witnesses was an abuse of its discretion and that he was prejudiced by such action.

■ There was no error, plain or otherwise, upon the trial court's order of restraint by handcuffs of appellant and his witnesses during trial. Appellant's point (6) is meritless and is ruled against him.

Under his point (7), appellant charges that the trial court committed plain error in the submission of an instruction to the jury. That instruction reads:

"INSTRUCTION NO. 13

If you find and believe from the evidence that the defendant was involved in offenses other than the one for which he is now on trial and other than the offenses mentioned in Instruction No. 12, you may consider that evidence on the issue of identification, motive, intent, presence of a common scheme or plan of the defendant and you may also consider

such evidence for the purpose of deciding the believability of the defendant and the weight to be given to his testimony. You may not consider such evidence for any other purpose."

The approved M.A.I. instruction, MAI–CR2d 3.60, reads:

"3.60 Other Offenses by Defendant to Show Intent, etc., and, in Addition, for Impeachment Where He Testifies

If you find and believe from the evidence that the defendant was (involved in) (convicted of) (an offense) (offenses) other than the one for which he is now on trial (and other than the offense mentioned in Instruction No. _____), you may consider that evidence on the issue of (identification) (motive) (intent) (absence of mistake or accident) (presence of a common scheme or plan) ( [*specify other purpose for which the evidence was received as substantive evidence of guilt* ] ) of the defendant (and you may also consider such evidence for the purpose of deciding the believeability of the defendant and the weight to be given to his testimony). (You may not consider such evidence for any other purpose.)"

Our review of this alleged error is under the plain error rule upon the same reason set forth under (1) above.

Appellant attacks the above instruction on the following basis. First, it failed to comply with MAI–CR2d; second, the instruction lists all the exceptions to the general rule prohibiting the admissibility of evidence of other crimes, and not the exceptions that were the basis for admitting the particular testimony; and third, the instruction told the jury it could rely on evidence of unrelated crimes to decide the issue of believability of the defendant and the weight to be given to his testimony. Appellant then contends that the latter part of the instruction was particularly damaging in light of the state's closing argument.

In the first instance and as noted, our review is for plain error, Rule 28.02(e). There is no question that the instruction, as submitted, was not in conformity with

MAI–CR2d 3.58, Notes on Use, because the instruction included the phrase, "and you may also consider such evidence for the purpose of deciding the believability of the defendant and the weight to be given his testimony." MAI–CR2d 3.58(g) provides: "If the defendant testifies and if there is evidence that the defendant was involved in but *not* convicted of a 'related crime' but was convicted of an 'unrelated crime,' then both MAI–CR 3.58 and 3.60 should be given. In such case, in MAI–CR 3.60 . . . (3) the parenthetical reference to believability will be omitted."

While nonconformity is alleged based upon a listing of all the exceptions to the general rule prohibiting admissibility of evidence of other crimes, the lack of conformity was the inclusion of the phrase, "and you may also consider such evidence for the purpose of deciding the believability of the defendant and the weight to be given his testimony." Under the facts and circumstances herein, to wit—there was evidence appellant was involved in but not convicted of related crimes (i.e.,) assault upon a second inmate and a prison officer—and under MAI–CR2d 3.58, Notes on Use (g), the phrase "will be omitted."

Under our review for plain error, the basic question for determination is whether the instruction as given, although erroneous for failure to comply with MAI–CR2d 3.58, Notes on Use (g), resulted in a manifest injustice or miscarriage of justice. We are referred to Rule 28.02(e) as well, which directs our courts to review the prejudicial effect, judicially, of any instruction not in conformity with M.A.I. *State v. Kimball,* 624 S.W.2d 158, 159 (Mo.App.1981); *State v. Bellah,* 603 S.W.2d 707, 710 (Mo.App.1980).

In addition to the challenge that the instruction did not comply with M.A.I., appellant charges that the instruction was further defective because it listed all the exceptions to the general rule prohibiting the admissibility of evidence of other crimes and not the exception or exceptions that were the basis for admitting the particular testimony. Appellant does not expand his argument beyond the foregoing broad general allegation.

■ The record before this court contains substantial evidence of appellant's attempt to stab another inmate and a prison officer. Appellant broadly asserts that the instruction permitted the jury to consider the evidence related to these other offenses, without exception. Contrary to appellant's assertion, the evidence challenged was admissible to show identification, motive, intent and/or a common scheme or plan. The instruction was not defective as it instructed the jury upon that issue. That challenge made by the appellant is meritless.

Furthering his argument, appellant challenges the instruction by asserting, "[I]t told the jury it could rely upon evidence of unrelated crimes to decide the issue of believability of the defendant and the weight to be given his testimony." As noted above under MAI–CR2d 3.58, Notes on Use (g), the parenthetical phrase which references the believability of appellant should have been omitted. Appellant's contention is that failure to comply with MAI–CR2d 3.58(g) prejudiced him. It is necessary to digress and refer to the instruction submitted just prior to the challenged instruction. That instruction reads:

### "INSTRUCTION NO. 12

If you find and believe from the evidence that defendant was convicted of the offenses of rape, armed robbery and jail break and escape, you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. You must not consider such previous convictions as any evidence that the defendant is guilty of any offense for which he is now on trial."

In the foregoing instruction, it is readily observed that the jury was instructed it could consider appellant's convictions for rape, armed robbery, jail break, and escape for the *sole purpose* of deciding appellant's believability. This instruction conforms to MAI–CR2d and its submission goes unchallenged.

In deciding whether the challenged instruction, erroneous for failing to comply with MAI–CR2d 3.58(g), resulted in manifest injustice or a miscarriage of justice, this court must consider all of the instructions and the whole of the evidence. The evidence established appellant's prior convictions for rape, armed robbery, jail break and escape. The evidence showed that appellant attempted to stab another inmate and a prison officer. The evidence also depicted the type, location, multiplicity, and severity of the wounds upon the victim. The evidence established the lack of any wounds or injury to appellant. The evidence described the activity in the area of the offense by other inmates momentarily prior to the offense, the continued activity of all the participants, and the activity concerning the attempted stabbing of another inmate and prison officer after the commission of the offense.

Respondent argues to this court that the evidence is inconsistent with appellant's account of events, and that the evidence is sufficient from which the jury could have determined it did not believe appellant. In addition, respondent directs attention to the unchallenged instruction which allowed the jury to consider unrelated convictions for and upon its consideration of appellant's believability, and argues that such prior crimes would seem more relevant to the issue of appellant's believability than the evidence that appellant attempted to stab another inmate and prison officer.

When the evidence upon this record is viewed as a whole, it must be concluded that it served a sufficient basis from which the jury could make its determination of the believability of appellant. In addition to the evidentiary basis, the jury's attention (on the issue of appellant's believability) was directed by the instruction upon prior unrelated offenses for which he stood convicted. In the consideration of all of these factors, it cannot be concluded, although the contrary is urged by appellant, that the inclusion of the parenthetical phrase [see MAI–CR2d 3.58, Notes on Use (g)] resulted in any prejudice to appellant.

As a final contention under this alleged error, appellant contends that the challenged instruction was particularly damaging in light of the prosecution's argument that both appellant and his witnesses were all liars. Aside from this broad assertion, appellant offers no further argument. Review of the final arguments reveals the prosecution's challenge to appellant and his witnesses as being untruthful did not involve the use of or any reference to the now challenged instruction. The use of and reference to the challenged instruction was in regard to the determination of the issues of identification, motive, plan, and intent, and not to appellant's believability or credibility. There is no merit to appellant's final contention under this point.

While the submission of the challenged instruction was erroneous for failing to comply with MAI–CR2d 3.58, Notes on Use (g), appellant fails to establish how he was prejudiced, and there is no showing of any manifest injustice or miscarriage of justice. Appellant's point (7) is meritless and is ruled against him.

Under his point (8), appellant charges that the trial court committed plain error in overruling his motions for acquittal of the charge of capital murder, because the state failed to prove the elements of premeditation and deliberation. Our review of this alleged error is under the plain error rule for the same reasons set forth under point (1) above.

There is no dispute between the parties that the instant case, like most homicide cases, was a case based upon circumstantial evidence. In charging that the state failed to prove deliberation and premeditation, both essential elements of capital murder, appellant contends that the only evidence submitted was from witnesses who gave an accounting of events following the stabbing of the victim, evidence relative to blood found on appellant's clothing in Cell 36 and from the surrounding area, and evidence relative to the number of stab wounds suffered by the deceased victim. Appellant contends that none of this evidence, including the events which occurred subsequent

to the death of the victim, was proof of his state of mind prior to the death of the victim.

Appellant likens the instant case to *State v. Black,* 611 S.W.2d 236, 242 (Mo.App.1980), a case wherein the accused was charged with murder second degree, and the conviction was reversed upon the reviewing court's finding that the state failed to carry its burden of proof that the accused intentionally killed her husband. *Black* at 241, is also cited by appellant for the court's declaration that "[t]his evidence (that the gun in question could not be discharged by its being accidentally dropped) was apparently offered on the theory that the state could establish its case solely by proof of the inaccuracy of defendant's explanation. We have serious reservations that the state can carry its burden in such a fashion." Appellant further points out that in *Black,* the state based its case on the theory that the jury should not believe the accused. Appellant contends that the prosecution herein applied to and tried the instant case upon the same theory—that of unbelievability of appellant and his witnesses, because they were all inmates. It will be observed, infra, that *Black* neither persuades nor controls, because the instant case included a more evidentiary basis than was found in *Black.*

■ By this alleged error, appellant has requested this court to determine the sufficiency of the evidence upon the elements of premeditation and deliberation. Such review is subject to the rule that all of the evidence, both direct and circumstantial, along with all reasonable inferences therefrom, is accepted as true in support of the verdict. All contrary evidence and inferences therefrom are to be disregarded. *State v. Turner,* 623 S.W.2d 4, 6 (Mo. banc 1981), cert. denied, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982). Such review is conducted to determine if the jury could have found the accused guilty upon the evidence. *State v. Wood,* 596 S.W.2d 394, 400 (Mo. banc 1980).

In his argument, appellant draws no attention to the following evidence upon the record: As noted and from the factual summary above, this record shows that prior to the killing of the victim, there was an unusual gathering of inmates in areas within the cell block where they normally did not gather; there were repeated requests for an early call for "mainline" by asking the guard to ring the buzzer; the guard in the immediate area was watched by inmates; the victim's cellmate had left the cell unusually early; the stabbing occurred on Sunday, a day of the week when there was not the normal number of prison guards for the area; there was evidence as to the severity and multiplicity of the stab wounds inflicted upon the victim; appellant and Guinan made trips to the victim's cell just prior to the stabbing of the victim; there was evidence that following the stabbing of the victim, Guinan and appellant, in concert, attempted to stab another inmate and a prison officer during which time reference was made to the victim and the second inmate, alleging that they were "snitches" and that they had "got" the victim for being a snitch and they were going to also "get" the second inmate.

■ Briefly, it should be noted that the terms *premeditation* and *deliberation* have been defined by our courts. Summarily stated, premeditation has been held to mean and to have occurred if an accused has reflected on his act for any length of time before the commission of the act. Deliberation occurs where the act has been "performed with 'a cool and deliberate state of mind.'" *Turner, supra* at 7. A deliberate act has also been defined as an act "performed as a 'free act of the will,' ... 'not under the influence of a violent passion suddenly aroused by some provocation' ... [I]t is not necessary that the actor brood over his actions for an appreciable period of time to constitute deliberation." *State v. Ingram,* 607 S.W.2d 438, 443 (Mo.1980). There is no question that both premeditation and deliberation can be inferred from existing circumstances. *State v. Bolder,* 635 S.W.2d 673, 680 (Mo. banc 1982); and *Turner, supra.*

■ The trial court did not commit any error, plain or otherwise, in denying appel-

lant's motions for acquittal of the offense of capital murder. Appellant's point (8) is meritless and is ruled against him.

Under his point (9), appellant charges that the trial court committed plain error in overruling his motion for acquittal because the state failed to refute his special defense—to wit—self-defense. Our review of this alleged error is under the plain error rule for the same reason set forth under point (1) above.

■ Appellant contends that he submitted evidence in support of his self-defense plea to which the state submitted no refutable proof. The record refutes appellant's contention. In addition to the evidence mentioned repeatedly above concerning the multiplicity of the stab wounds to the victim, the severity of those wounds, and the lack of wounds or injury to appellant, the evidence further revealed that the victim suffered a stab wound to the back, there was no evidence of any injury to the victim's arms or hands, the majority of the stab wounds were to the victim's right side, appellant is right-handed, and appellant was observed leaving the victim's cell with the weapon in his right hand. Appellant testified that he and the victim engaged in a face-to-face encounter. The evidence as to the location and multiplicity of the wounds upon the victim, that most of the wounds were on his right side, that the victim sustained a stab wound to his back, that the appellant is right-handed, and the absence of wounds or injury to appellant is evidence inconsistent with appellant's self-defense claim. Appellant suggests that the state was required to meet and refute each element of his claim of self-defense. This is not required. *State v. Simms,* 602 S.W.2d 760, 761 (Mo.App.1980). In *Simms,* this court set forth the requisite elements of self-defense as follows:

> "1) an absence of aggression or provocation on the part of the slayer; 2) there must be the presence of real or apparently real necessity to kill in order to save oneself; 3) a reasonable cause must exist for belief of such necessity; 4) the slayer must have done everything in his power

consistent with his own safety to avoid the danger and avert the necessity, and he must retreat, if retreat is practicable; and 5) he must not use more force than reasonably appears necessary to him under the circumstances to resist the danger with which he believes he is confronted."

For a recent holding where evidence was insufficient to submit the issue of self-defense to the jury, see *State v. Fincher,* 655 S.W.2d 54 (Mo.App.1983).

*Simms* also rules that evidence required to meet the burden of proof to refute a claim of self-defense may be met by evidence within the state's case in chief, and only when the evidence in regard to the necessary elements of self-defense is clear and undisputed should our courts order acquittal. *Simms* at 764–65.

■ In the instant case, although appellant argues to the contrary, it cannot be concluded that the evidence relative to appellant's claim of self-defense was clear and undisputed. *Simms, supra.*

The trial court committed no error, plain or otherwise, in denying appellant's motion for acquittal upon the allegation that the state failed to refute his special defense—to wit—self-defense. Appellant's point (9) is meritless and is ruled against him.

Under his point (10), appellant charges the court with plain error in not ordering a new trial sua sponte because appellant's defense counsel was ineffective. Our review of this alleged error is under the plain error rule for the same reason set forth under point (1) above.

Appellant contends that his defense counsel was ineffective because his counsel made repeated references to the killing as a murder and such references were directly contrary to his self-defense claim.

The allegation of ineffective assistance of counsel is not generally reviewable by direct appeal. Such an allegation is usually disposed of by a Rule 27.26 post-conviction review. *State v. Larrabee,* 572 S.W.2d 250, 252 (Mo.App.1978). There is an exception to this rule, however, if the trial record discloses sufficient facts have been devel-

oped to provide a meaningful review of the allegation. *Larrabee, supra.*

On this appeal, appellant has failed to demonstrate how his trial counsel was ineffective or how he was prejudiced thereby. His mere allegations of such do not suffice. The record herein does not provide this court with sufficient facts to permit any meaningful review of the allegation.

■ The trial court committed no error, plain or otherwise, in not granting appellant a new trial sua sponte upon appellant's allegation of ineffective assistance of counsel. Appellant's point (10) is meritless and is ruled against him.

Under his final point (11), appellant charges that the trial court erred in admitting evidence of other crimes which did not tend to prove any element of the crime with which appellant was charged.

Appellant specifically attacks the evidence admitted over his objection depicting his attempts to assault prison officer Borghardt. He argues that this was proof of a separate criminal act which did not tend to prove any element of the crime with which he was charged. He further argues that since his evidence revealed he had, in defense of his life, just been in a fight to save his life and that his actions relative to Officer Borghardt displayed his state of mind after such a fight, this does not tend to prove his state of mind before the fight.

It serves no purpose to restate the facts attending this matter as they have been set forth and in part repeated above.

■ The general rule is, of course, that evidence of other crimes is inadmissible. However, there are exceptions to this rule. One such exception is applicable herein. If evidence of other offenses is, by point in time, so linked to the offense for which an accused stands charged and the proof of one cannot be completely shown without proof of the other, then the rule does not apply. In such a case, the prosecution is " 'not required to nicely sift and separate the evidence and exclude the testimony, tending to prove the crime for which (the accused) is not on trial.' " *State v. Holley,* 488 S.W.2d 925, 926 (Mo.App.1972).

■ The evidence upon this record tended to show that appellant and his accomplice Guinan murdered the victim. After they left the victim's cell, they attempted to stab another inmate. Their own statements about the victim and the second inmate being snitches further revealed their intentions. Borghardt and other officers attempted to prevent the attack on the second inmate, during which appellant attempted to stab Borghardt. The attempted attack on Borghardt, as the evidence reveals, was immediately linked in point of time to the murder of McBroom. When the evidence is reviewed as a whole, it is obvious that to prove the murder of McBroom fully, proof of the attempted assault upon the second inmate and Borghardt was necessary. Not only were the two offenses linked so closely in time, but further statements by both appellant and Guinan during this second offense depicted the reasons for the murder of McBroom by appellant and Guinan.

This case falls within the rule announced in *State v. Rezabek,* 584 S.W.2d 430, 434 (Mo.App.1979) where the court stated:

"[i]f two or more persons engage in the commission of a crime or crimes, proof of all relevant facts is proper. Where two crimes are committed under such circumstances as to constitute one continuous transaction in the accomplishment of a common design, and the facts are so interrelated that crimes are concurrent, evidence of all criminal acts that occur during such time span are admissible, as otherwise, a connected and intelligible statement of the occurrence could not easily be made, or understood."

The trial court did not err in admitting over objection the evidence concerning the attempted stabbing of the second inmate and Officer Borghardt.

There is no merit to appellant's final point (11) and it is ruled against him.

The judgment is in all respects affirmed.

All concur.