**STATE of Missouri, Respondent,**

v.

**Vicky Lynn WILLIAMS, Appellant.**

**No. 61740.**

Supreme Court of Missouri,
En Banc.

Jan. 13, 1981.

Rehearing Denied Feb. 9, 1981.

**28**

Charles M. Shaw and Clifford Schwartz, Clayton, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Appellant was charged by information in lieu of indictment in the Circuit Court of St. Louis County, Missouri, with capital murder for the killing of her husband, Gilbert Williams. Sec. 565.001, RSMo 1978. She was convicted of capital murder and sentenced by the jury to life imprisonment without possibility of probation or parole for fifty years. Jurisdiction for this appeal lies in this Court by virtue of Art. V, § 3, Mo. Const.

There being no challenge to the sufficiency of the evidence to support the conviction, only a brief recitation of the facts is necessary. Gilbert and appellant were having marital difficulties. Several witnesses testified that appellant had complained that Gilbert beat her and their two children. It also appears that appellant had contemplated getting a divorce, but had abandoned the idea for fear that she might lose custody of the children. This fear was based generally upon appellant's sexual conduct. She characterized her marriage to Gilbert as an "open marriage" wherein their sexual relations were not exclusive.

At least as early as November of 1978, appellant began soliciting various young men to assist her in killing Gilbert. Prior to February 1979, two different plans to that end were developed, but neither was implemented for lack of such assistance or for lack of opportunity. Finally, on the evening of February 2, 1979, appellant successfully recruited five men, Michael Shane, David Yoebstl, Robert Abel, Ronald Nunnery and Terry McIlvoy, to travel to the Spirit of St. Louis Airport, where Gilbert worked as a security guard, to kill him. All but Yoebstl went in search of Gilbert, but could not get close enough to his truck to complete the task. On the evening of Saturday, February 3, 1979, appellant hosted a party while Gilbert was at work at the airport. There was testimony that she told some of the men that the job had to be done that night.

Early Sunday morning, February 4, the same five men again went to the airport. Shane and McIlvoy walked to a point on the airport grounds where appellant told them Gilbert stopped on his rounds to punch a watchmen's clock. Shane carried a hickory club and McIlvoy was armed with a .22 calibre rifle. When Gilbert stopped his truck, McIlvoy fired several rounds into the driver's side window. Shane used the club to smash out the remainder of the window and McIlvoy shot a few more times through

the opening. A post mortem examination of Gilbert's body revealed that he was hit with five .22 caliber bullets.

In the first of five points of error, appellant claims that the trial court committed prejudicial error in giving instruction MAI–CR 2.01, rather than MAI–CR2d 2.01.[1] She urges this Court to adopt the recommendation of the Committee on Pattern Criminal Charges and Instructions that MAI–CR2d instructions be used for all offenses committed after January 1, 1979.[2] This rule was recently approved in *State v. Lute,* 608 S.W.2d 381 (Mo. banc 1980).

It is clear that the giving or failure to give a proper instruction is error, the prejudicial effect of which, if any, to be judicially determined. Rule 20.02(e), now Rule 28.-02(e); *State v. Heitman,* 589 S.W.2d 249, 255 (Mo. banc 1979); *State v. Graves,* 588 S.W.2d 495 (Mo. banc 1979). Indeed, as we said in *Graves, supra,* at 497:

> [A]ny error associated with noncompliance is "presumptively prejudicial," *State v. Clifton,* 549 S.W.2d 891, 895 (Mo.App. 1977), or as earlier put in *State v. Billingsley,* 534 S.W.2d 484, 485 (Mo.App. 1975), any error associated with noncom-

pliance "must be deemed prejudicial unless the contrary clearly appears." * * *

■ In this case, appellant contends that the indefinite masculine pronouns "he" and "his" as contained in MAI–CR 2.01 cause the jury to weigh the testimony of male witnesses differently than that of female witnesses. She notes that this Court condemns the use of instructions which unduly direct attention to the credibility of a witness or classes of witnesses. *State v. Everett,* 448 S.W.2d 873, 878 (Mo. 1970). Appellant contends that she was prejudiced by MAI–CR 2.01 because all the witnesses against her are male, while the primary defense witness, appellant herself, is female. We find no prejudice resulting from the giving of MAI–CR 2.01, rather than MAI–CR2d 2.01. First, it is a long established rule of English grammar that the use of indefinite masculine pronouns is entirely proper when referring to a person in a neutral and general sense. Further, this exact complaint was asserted and rejected in *State v. Jones,* 604 S.W.2d 665 (Mo.App. 1980).

■ Appellant next attacks Instruction No. 4, the capital murder verdict directing instruction submitted by the State.[3] In-

---

1. The underlined words appear in MAI–CR and the bracketed words appear in MAI–CR2d:

   \* \* \* \* \* \*

   However, no statement, ruling or remark that *the Court* [I] may make during the trial is intended to indicate *its* [my] opinion of what the facts are. It is your duty to determine the facts and to determine them only from the evidence and the reasonable inferences to be drawn from the evidence. In this determination, you alone must decide upon the believability of the witnesses and the weight and value of the evidence.

   In determining the believability of a witness and the weight to be given to *his* testimony [of the witness] you may take into consideration *his* [the witness'] manner while testifying, *his* [the] ability and opportunity [of the witness] to observe and remember any matter about which *he testifies* [testimony is given], any interest, bias or prejudice *he* [the witness] may have, the reasonableness of *his* [the witness'] testimony considered in the light of all of the evidence in the case, and any other matter that has a tendency in reason to prove or disprove the truthfulness of the testimony of the witness.

   \* \* \* \* \* \*

2. 35 J. Mo. Bar 13, 27 (1979).

3. *Instruction No. 4 reads as follows:*

   If you find and believe from the evidence beyond a reasonable doubt:

   First, that on or about February 4, 1979, certain persons with the aid of defendant committed the offense of capital murder of Gilbert Williams, and

   Second, that the defendant, either before or during the commission of the offense of capital murder, with the purpose of promoting its commission aided such persons in planning that offense, and

   Third, that on or about February 4, 1979, in the County of St. Louis, State of Missouri, the defendant aided other persons who caused the death of Gilbert Williams by shooting him, and

   Fourth, that the defendant intended to take the life of Gilbert Williams, and

   Fifth, that the defendant knew that they were practically certain to cause the death of Gilbert Williams, and

   Sixth, that the defendant considered taking the life of Gilbert Williams and reflected upon this matter coolly and fully before doing so, then you will find the defendant guilty of capital murder.

struction No. 4 contained the phrases "certain persons," "such persons" and "other persons," in successive paragraphs to describe the persons whom appellant allegedly aided in the killing of Gilbert. She claims that not only are these different modifiers confusing in that the jury could find that appellant gave aid to more than one group, but also that any suggestion that she aided more than one group is a misstatement of the evidence. This argument is self-contradictory, for if there is evidence of only one group of people, how can it be said that a jury of reasonably intelligent and attentive people could be confused or misled into finding that there were two such groups. This attack is obviously without merit. Second, appellant argues that Instruction No. 4 is defective because its description of "aid rendered" is of insufficient detail. It appears that Instruction No. 4 is a combination of MAI–CR2d 2.12 and MAI–CR2d 15.-02; thus, the content of the instruction is governed by Rule 28.02(d), which specifically prohibits the submission of "detailed evidentiary facts." For this reason, appellant's second attack also fails. Third, appellant cites *State v. Edmonds*, 347 S.W.2d 158 (Mo. 1961) to argue that unfairly repetitious instructions should not be given. She contends that Paragraph Third of Instruction No. 4 is so similar to Instruction No. 7 (MAI–CR2d 2.10) as to be unfairly repetitious. Contrary to appellant's claim, the Notes on Use to MAI–CR2d 2.10 require that both MAI–CR2d 2.10 and MAI–CR2d 2.12 be given. In summary, we find that none of the alleged defects in Instruction No. 4, either singly or collectively, resulted in any prejudice to appellant.

Appellant's third point of error is that the trial court erroneously gave the third paragraph of Instruction No. 7 (MAI–CR2d 2.10, ¶ 4) which reads:

> However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense. MAI–CR 15.02/2.12 Modified Submitted by the State.

4. Ronald Nunnery, David Yoebstl and Robert Abel were granted immunity from prosecution in exchange for their testimony against appel-

It is no defense to any prosecution for any offense in which the criminal responsibility of the defendant is based upon the conduct of another that such other person has been convicted of some other offense or degree of offense, or is immune from prosecution.

She points to the Notes on Use to MAI–CR2d 2.10, saying that this language should not be included unless there is evidence making it applicable. In this case, appellant elicited testimony that some of the participants had been granted immunity or had accepted plea bargains.[4] She argues, however, that such evidence was used solely for impeachment, rather than to further any defense to the charge; and that the inclusion of the paragraph was prejudicial because it tended to deprecate the impeaching quality of the testimony.

■ The State counters this argument by pointing out that prior to closing argument, there is no way to know what uses a defendant may make of evidence such as this. Such being the case, the contested paragraph would become utterly useless because the State and the trial court would be forced to speculate as to whether it would become applicable. While this argument has a certain attraction, we need not rely upon it. In this case, the defense ably used the testimony in closing argument to impeach the witnesses' credibility. The third paragraph of Instruction No. 7 merely limited the jury's consideration of the testimony to impeachment. Rather than diminish the quality of the impeaching character, the instruction serves to reiterate that the testimony may be used only for impeachment purposes, and thus, no prejudice resulted from this use.

Appellant's fourth assignment of error is that the trial court improperly failed to direct a verdict and enter a judgment of

lant. It appears that Michael Shane invoked his fifth amendment right to remain silent when deposed by appellant until he pled guilty to the charge of second degree murder with a sentence of eighteen years imprisonment. Shane testified that he agreed to do so only after the bargain was struck.

acquittal because it lacked jurisdiction to hear this case. This contention is based upon an alleged vagueness of the information by which appellant was charged. She believes the phrase "aid others" is insufficient to properly inform her of the charge.

■ It is beyond question that to be sufficient, an information must adequately notify a defendant of the charge, *State v. Tandy*, 401 S.W.2d 409 (Mo. 1966), and the elements of the offense charged must be pleaded with definiteness and certainty. *State v. Cantrell*, 403 S.W.2d 647 (Mo. 1969). As we said in *State v. Brooks*, 507 S.W.2d 375 (Mo. 1974), an information is jurisdictional in the sense that if it fails to charge a crime the court acquires no jurisdiction to proceed, and whatever transpires thereafter is a nullity.

■ In order to determine whether the trial court acquired jurisdiction of appellant's case, we examine the information.[5] The information substantially follows the form set out in MACH–CR 16.02. It contains the statutory language of § 565.001, RSMo 1978, the capital murder statute, such language being preferred. *State v. Simone*, 416 S.W.2d 96 (Mo. 1967). The county in which the crime occurred was stated in the information, and when examined, it is clear that it accurately and fully stated all the essential elements of the crime of capital murder and therefore, was sufficient to charge that crime and vest the trial court with jurisdiction.

■ It appears to us that rather than contesting the trial court's jurisdiction, the true nature of appellant's complaint is that the information is not specific enough to allow her to adequately prepare for trial. This conclusion is suggested by appellant's use of *State v. Nolan*, 418 S.W.2d 51 (Mo. 1967), which deals with the specificity of the acts constituting the crime as recited in

the information. Her argument discloses a belief that the information should include a detailed description of her alleged acts of "aid." This being the real basis of her complaint, the objection was waived. Rules 23.04; 24.04(b)(2); *Kansas City v. LaRose*, 524 S.W.2d 112 (Mo. banc 1975); *State v. Jenkins*, 494 S.W.2d 14 (Mo. 1973); *State v. Williams*, 588 S.W.2d 70 (Mo.App.1979).

■ Appellant also claims that the information was insufficient because it did not include the names of those to whom her aid was allegedly given. She relies upon *United States v. Simmons*, 96 U.S. 360, 24 L.Ed. 819 (1878), wherein the information was found defective because it failed to name the person whom the defendant allegedly procured to operate a still. *Simmons* has no bearing or application to this case, as here, appellant is charged with personally committing the subject act by procuring others to commit it. Therefore, we find the information valid in all respects.

Fifth, and finally, appellant asserts that the trial court erred in overruling her motion for new trial, which was predicated upon alleged State interference with her ability to compel the attendance of a favorable witness, in violation of her rights guaranteed by the sixth amendment and Art. I, § 18(a), Mo.Const.

A short recitation of certain facts and testimony is necessary to understand this point. As previously mentioned, appellant and Gilbert had what appellant called an "open marriage," meaning that their sexual activities were not confined to each other. The trial disclosed that appellant had a homosexual liaison with a woman named Sharon Marshall. Several witnesses testified that it appeared that Sharon was the dominant partner in the relationship and was jealous of attention given appellant by Gilbert.

5. The operative language of the information reads as follows:

That Vicky Lynn Williams in the County of St. Louis, State of Missouri, on or about the 4th day of February, 1979, did knowingly and intentionally and purposely aid others in planning and committing the class A felony of Capital murder, in violation of Section 565.001, RSMo., punishable upon conviction under Section 565.008.1, RSMo., in that the defendant willfully, knowingly, with premeditation, deliberately and unlawfully killed Gilbert Lee Williams by shooting him, thereby causing him to die.

**32**

Sharon testified at the hearing on the motion for a new trial that shortly before she was to be deposed as a defense witness, Officer Michael Farmer advised her that it was rumored that part of the defense strategy was to cast suspicion for the killing on her, supposedly based upon her jealousy. He reportedly told her that she should obtain legal advice. When deposed by defense counsel, Sharon invoked the fifth amendment and absented herself from the state.

Appellant's argument is that Farmer's advice to Sharon was intimidating, coercive and threatening, the result of which being appellant's loss of potentially helpful testimony. She compares this situation to that in *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), wherein the sole defense witness was discouraged from testifying by a trial court's lecture on the perils of perjury. Appellant maintains that in both cases, those sworn to uphold the law interfered with witnesses so egregiously as to deprive the defense of valuable testimony.

Contrary to appellant's argument, *Webb* provides no assistance in this case. There, the Court found that the excessive nature of the trial court's admonition exerted duress sufficient to preclude the witness' free choice of whether to testify. In the present case, Sharon testified that she believed Farmer's advice to be friendly and that she did not feel threatened by him. Sharon's own testimony rebuts appellant's contention that she refused to testify because of threats or coercion. Further, as the State points out, appellant's claim of being deprived of helpful testimony is contradicted by Sharon's appearance at the trial and appellant's apparent failure to use the subpoena power available to compel her continued presence and testimony. We find no merit in this final claim.

The judgment is affirmed.

All concur.