**STATE of Missouri, Respondent,**

v.

**David A. LIVINGSTON, Appellant.**

**No. 72648.**

Supreme Court of Missouri,
En Banc.

Dec. 18, 1990.

Rehearing Denied Jan. 9, 1991.

Elizabeth Bock, Asst. Public Defender, Springfield, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Defendant, David A. Livingston, was found guilty by a jury of robbery in the first degree, § 569.020,[1] and armed criminal action, § 571.015. He was sentenced to ten years imprisonment for the robbery and three years for armed criminal action, the sentences to be served concurrently. Defendant appeals. Affirmed.

■ As his first allegation of error, defendant contends there was insufficient evidence to support a guilty verdict for either offense. In reviewing a challenge to the sufficiency of the evidence, the state's evidence is considered in the light most favorable to the state, together with all reasonable inferences therefrom, and the court disregards all contrary evidence. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984). This Court is not to substitute its judgment for that of the jury; rather, it determines whether there was substantial evidence to support the jury's verdict. *State v. McGowan*, 621 S.W.2d 557, 558 (Mo.App.1981).

On June 21, 1988, John Van Bibber was working as night manager at Bair's Grocery, located on the southwest corner of the intersection of Campbell Street, also known as U.S. 160, and Plainview Road in Springfield, Greene County. He arrived at

1. Unless otherwise indicated, references to statutes are to RSMo 1986.

the store before 11:00 p.m. He and another employee prepared the cash register for the night shift by adding the following currency: five ten-dollar bills, ten five-dollar bills, and twenty-five one-dollar bills. Another twenty-five one-dollar bills were placed below the register. They also placed rolls of coins in the register. Van Bibber testified he believed the coins consisted of three rolls of quarters, three rolls of dimes, three rolls of nickels and three rolls of pennies.

Later in the evening, a customer entered and purchased a pack of cigarettes, handing Van Bibber two one-dollar bills. Van Bibber gave the customer coins in change.

Shortly after midnight, a young man came in, vaulted over the counter and shouted, "Give me the f_____ money or I'll kill you." The man had a gun in his hand, which Van Bibber believed was either a .32 or a .22 caliber. The man wore a manufactured ski mask with openings for eyes, nose and mouth. He was wearing a blue jacket bearing either a Standard or Amoco emblem. He had on faded blue pants, dirty dark tennis shoes, and brown knit work gloves.

The robber ordered Van Bibber to put all the money from the cash register into a paper grocery bag from the store. The bag was taken from a stack of grocery bags, some of which fell to the floor, where one was stepped on by the robber. All the money from the cash register was placed in the sack except one roll of dimes.

The robber ordered Van Bibber to the back of the store. Van Bibber ran out of the store to a nearby convenience store and called the police.

Christopher Cochran was driving south on U.S. 160 past Bair's store shortly after midnight, when he saw a person exit the store and run south. The person was hunched over and appeared to be carrying something. He saw the person duck behind some shrubs. Cochran also saw a dark colored Monte Carlo or Cutlass parked on the highway near the store. Neither the headlights nor the hazard lights were on. He saw a person with long dark hair, who appeared to be shirtless, in

the driver's seat. The person in the car was looking north toward Bair's store. Cochran drove past the parked vehicle, turned around a short distance to the south, and returned north to the intersection of Plainview Road. He turned around again and followed the Monte Carlo, which by that time had pulled out onto the highway, heading south. After a few minutes, Cochran was close enough to see two people in the car and to see the Oklahoma license plate bearing the number ZSS–222. Cochran notified the sheriff.

Officer David Sater received a dispatch about the robbery, while on patrol, along with the description of the Monte Carlo. At about 1:49 a.m. Sater noticed the car at a truck stop, occupied by three individuals. The license plate was Oklahoma ZSS–222. Sater followed the vehicle and stopped it. Officer Joe Nimmo arrived as a backup. The driver of the car, later identified as defendant's brother, exited and approached officer Sater. Officer Nimmo ordered the two occupants out of the car. One of the occupants was female and the other was defendant.

Nimmo found a loaded .357 Smith and Wesson magnum revolver and a paper bag containing fifty-three one-dollar bills, three rolls of quarters, three rolls of nickels and two rolls of pennies in the car. Two one-dollar bills were found in the front seat. Other items found in the car included: two handguns, one a .22 caliber and the other a .38 caliber, a pair of brown jersey gloves, four work shirts, including one with a "Standard" emblem on it, and some with holes cut out. Five ten-dollar bills and ten five-dollar bills were discovered when defendant was "patted down" by the officer.

Van Bibber testified that the amount of money taken from the store was between $189 and $209. At the time of defendant's arrest, a paper bag found in the car contained fifty-three one-dollar bills, three rolls of quarters, three rolls of nickels and two rolls of pennies. Defendant had the five ten-dollar bills and ten five-dollar bills that were found in his pocket. But for a single one-dollar bill, the money recovered from defendant was in exactly the same

denominations and amounts taken from the store register.

The robber's clothing as detailed by Van Bibber was similar to that found in the Monte Carlo. Defendant's own testimony put him in the area of Bair's Store during the time of the robbery. Defendant also testified that his brother was driving the entire time the trio was in Springfield. Defendant's brother was described by officer Sater as being six feet, two inches tall, taller than the robber's height according to Van Bibber. Defendant's shoes matched the description of those worn by the robber. His brother was wearing cowboy boots. Finally, the paper bag the robber stepped on during the robbery was the same size and displayed the same words, figures and symbols as the bag found in the Monte Carlo containing the money.

At trial, defendant's version of the facts was identical to the testimony of Sharon Perry, the female arrested with defendant. Both testified that the three arrived in Springfield on the night in question at about 8:30 or 9:00 p.m. and began driving around, drinking beer and looking for some caves. They both testified that they stopped at several stores. Their last stop in Springfield was for Sharon to "go to the bathroom" on the side of the highway.

Defendant contends the trial court erred in failing to grant his motion for judgment of acquittal because the state failed to sustain the higher standard of legal proof required when relying on circumstantial evidence for both convictions.

■ Circumstantial evidence sufficient to support a conviction is ascertained by application of the test set forth in *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). Where the conviction rests on circumstantial evidence, the facts and circumstances to establish guilt must be consistent with each other, consistent with the guilt of the defendant, and inconsistent with any reasonable theory of his innocence. In such cases, the evidence need not be absolutely conclusive of guilt, nor must the evidence demonstrate the impossibility of innocence. *Id.* at 534.

The evidence to prove defendant's guilt shows defendant, within two hours after the robbery, was found in an adjoining county in the Monte Carlo that was parked within two hundred yards of the robbery scene at the time of the occurrence. But for a single dollar bill, the currency in defendant's pocket and the paper bag in the seat he occupied in the Monte Carlo was identical in number and denomination to the currency taken in the robbery. The number of rolls of quarters and nickels in the bag was identical to the number of rolls of quarters and nickels taken in the robbery. The paper bag in defendant's possession displayed the same words, figures and symbols as the bag stepped on by the robber at the store. The robber wore dark, dirty tennis shoes; defendant was wearing blue tennis shoes when arrested.

From this evidence, the jury could reasonably find defendant had committed both offenses. These circumstances, taken together, are inconsistent with defendant's innocence and exclude any reasonable hypothesis of his innocence.

Defendant makes much of certain discrepancies in the evidence and testimony by Van Bibber. For instance, defendant notes that although Van Bibber described the robber as wearing a blue zipper jacket, none was found in the car or on the defendant. The same is said of the shirt with piping and faded twill pants the robber was wearing. At the scene of the arrest, both defendant and his brother were shirtless and wearing jeans. Defendant also states there was no gun found that fit the description by Van Bibber of a .32 caliber revolver. It should be noted that this witness stated the gun could have been either a .32 or a .22. There was a .22 found in the Monte Carlo, along with two other guns.

At the time of the robbery, Mr. Van Bibber was disabled, had a hearing loss and a heart condition, for which he was taking nitroglycerin and other medication regularly. He described himself as a "little short guy." Given the circumstances, discrepancies are not only reasonable, but expected. Jurors who view and hear testimony are able to weigh witness intangibles that es-

cape in the cold text of a transcript. The discrepancies raised by defendant go to the weight and credibility of the testimony of Mr. Van Bibber, and are proper issues for the jury to decide. *State v. Giffin*, 640 S.W.2d 128, 131 (Mo.1982). This is also true of the testimony of defendant and the defense witness, Sharon Perry.

The evidence was sufficient to deny defendant's motion for judgment of acquittal. This point is ruled against defendant.

As his second point, defendant asserts instructional error. He complains instruction no. 5 was flawed because it failed to follow the guidelines set out in MAI–CR3d 323.02. The instruction, as given, reads:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about the 22nd day of June, 1988, in the County of Greene, State of Missouri, the defendant took money, which was property in the possession of John W. Van Bibber, and

Second, that defendant did so for the purpose of withholding it from the owner permanently, and

Third, that defendant in doing so threatened the immediate use of physical force on or against John W. Van Bibber for the purpose of forcing John W. Van Bibber to deliver up the property, and

Fourth, that in the course of taking the property, the defendant or another person displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument, and

Fifth, that the other person was a participant with defendant in the commission of the offense, then you will find the defendant guilty under Count I of robbery in the first degree.

. . . .

Instruction no. 5 was based on MAI–CR3d 323.02 (1–1–87). The Notes on Use for MAI–CR3d 323.02 (1–1–87) state:

. . . .

2. Section 569.020 provides that either the defendant or "another participant in the crime" may be the person who com-

mitted the act described in paragraph Fourth. This creates a special type of accessorial liability and is not created by virtue of the general principles of liability as prescribed by Sections 562.036 and 562.041, RSMo 1986.

If the defendant committed the acts described in paragraphs First, Second, and Third, but another participant committed the act described in paragraph Fourth, then this instruction is the proper instruction to use and paragraph (Fifth) must be given. In such situations, the identification of the other participant in paragraph Fourth should be the same in paragraph (Fifth).

If someone other than the defendant committed some or all of the acts described in paragraphs First, Second, and Third, then this instruction should not be used, but rather an instruction based on MAI–CR3d 304.04 should be given. . . .

Defendant maintains the inclusion of the words "or another person" in paragraph Fourth was contrary to the Notes on Use and thus error. Defendant claims the instruction that authorized conviction of robbery went beyond the evidence in that it told the jury that even if another person displayed or threatened the use of a deadly weapon, the jury could still find defendant guilty. Defendant argues this is prejudicial error because there was no evidence presented at trial to show that someone other than defendant committed the act in paragraph Fourth.

The giving of an instruction in violation of the Notes on Use under MAI–CR constitutes error, its prejudicial effect to be judicially determined. Rule 28.02(f); *State v. Boggs*, 634 S.W.2d 447, 455 (Mo. banc 1982); *State v. White*, 622 S.W.2d 939, 943 (Mo. banc 1981). Borrowing from cases construing civil Rule 70.03, the cases have construed the language of Rule 28.02(f) to mean such errors are presumptively prejudicial unless the contrary is clearly demonstrated. *State v. Graves*, 588 S.W.2d 495, 497 (Mo. banc 1979); *State v. Clifton*, 549 S.W.2d 891, 894 (Mo.App.1977). The presumption of prejudice that has been construed from the language of Rule 70.03 has

undergone a substantial erosion in recent years.

Rule 70.03 provides that objections to instructions in civil cases "shall not preclude making additional objections to the same or other instructions in the motion for new trial." Construing the language of Rule 70.03, this Court has said that while no contemporaneous objection is necessary to preserve error, a party's failure to bring a deviation from the Notes on Use to the attention of the trial court may be considered in determining whether a variation from the approved civil instruction is prejudicial. *Hudson v. Carr*, 668 S.W.2d 68, 71–2 (Mo. banc 1984). The reason for the rule stated in *Hudson* is that when the court gives the text instruction and the deviation consists of failure to modify it and the defect is not readily apparent to alert counsel preparing to argue the case, there is very little likelihood the jury will be confused or misled.

At trial, defendant's attorney made a general objection to all instructions, as well as a specific objection to instruction No. 5. Neither objection made any claim that instruction No. 5 or any instruction deviated from the approved forms or Notes on Use. That complaint appeared for the first time in the Motion for New Trial.

█ In language similar to Rule 70.03, Rule 28.03 provides that objections to instructions in criminal cases may be "supplemented or enlarged in motions for new trial." The language of the two rules is very much alike. Because of the similarity, no sound reason exists for not applying the same principles when construing Rule 28.-03 that are applicable when construing Rule 70.03. Defense counsel's failure to object is a factor to be considered in determining prejudice.

█ While it is true that the evidence in this case undisputedly shows that one person, alone, committed all the acts in paragraph First through Fourth, the phrase "or another person" as used in Paragraph Fourth, was not prejudicial because it did not tend to mislead the jury. *See State v. Williams*, 611 S.W.2d 26, 30 (Mo. banc 1981); *State v. Arthur*, 57 S.W.2d 1061

(Mo.1933); *State v. Mandina*, 541 S.W.2d 716, 719 (Mo.App.1976).

Particularly persuasive in this connection is *State v. Williams*, 611 S.W.2d 26 (Mo. banc 1981). The defendant in that case had recruited five men to kill her husband. Two of the recruits actually committed the murder. Successive paragraphs of the verdict directing instruction referred to the group as "certain persons," "such persons," and "other persons." Allegedly, the instruction given deviated from the modifiers of the word "persons" found in the approved instruction. The defendant argued that the use of different modifiers would permit the jury to find that she gave aid to more than one group. The Court said:

> [I]f there is evidence of only one group of people, how can it be said that a jury of reasonably intelligent and attentive people could be confused or misled into finding that there were two such groups ... [W]e find that none of the alleged defects ... resulted in any prejudice to appellant.

*Id.* at 30.

Under the facts presented by the state in this case, previously discussed in detail, no reasonably attentive and intelligent juror could have been misled by the instruction. There was one person who took money from Van Bibber, and the same person displayed a deadly weapon. Applying the rationale of *Williams*, no prejudicial error occurred.

The same jury went on to find defendant guilty of armed criminal action. The instruction for that offense required the jury to find defendant committed the robbery with the assistance of a deadly weapon. Thus, the jury necessarily found defendant was the person wielding the gun. That finding by the jury removed any lingering doubt as to whether the jurors were confused by the language of instruction No. 5. Reading all the instructions together, as we must when reviewing a claim of prejudicial instructional error, any potential for the jury being misled was disposed of by the finding of guilt on the armed criminal ac-

**350**

tion charge. *See State v. Holt,* 592 S.W.2d 759, 776 (Mo. banc 1980); *State v. Cooper,* 712 S.W.2d 27, 30 (Mo.App.1986).

■ Defendant argues the additional language in instruction No. 5 lessened the state's burden of proof. It is equally arguable that the instruction as given imposed upon the state a greater burden by requiring the state to prove defendant was the actual perpetrator of the crime. A criminal jury instruction that puts an additional burden on the state beyond that which is legally required in order to establish guilt, is not prejudicial to the defendant. *See State v. Murray,* 630 S.W.2d 577, 580 (Mo. banc 1982); *State v. Oliver,* 720 S.W.2d 45, 46 (Mo.App.1986); *State v. White,* 651 S.W.2d 509 (Mo.App.1983). Ultimately, the instruction given required that the state establish all the elements of the offense, and the jury was not confused or misled.

Under the facts of this case, instruction No. 5 was not the proper instruction, but the deviation from MAI–CR3d Notes on Use was not prejudicial and is not ground for reversal. The judgment is affirmed.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., and MORGAN, Senior Judge, concur.

BILLINGS, J., not sitting.