STATE of Missouri, Plaintiff–Respondent,

v.

Barry W. CONDICT, Defendant–Appellant.

No. 23946.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 29, 2001.

Motion for Rehearing and Transfer Denied Nov. 20, 2001.

---

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

A jury convicted Barry Condict ("Defendant") of possession of chemicals with the intent to create a controlled substance in violation of § 195.420.[1] The trial court sentenced Defendant as a prior and persistent offender to twelve years' imprisonment with the Department of Corrections. Defendant appeals this conviction and sentence alleging (1) there is insufficient evidence to support the conviction, (2) instructional error, and (3) § 195.420 is unconstitutionally vague.

This court affirms the judgment of conviction and sentence.

### FACTS

In January 2000, Detective Mike Williams ("Williams") of Sikeston, Missouri, went to the home of Terry Schaumann ("Schaumann") to investigate a possible case of child endangerment. After talking with Schaumann and informing her of the allegations, Williams requested permission to search the house. Ultimately, Schaumann allowed Williams to make the search. At that point, Defendant came from the bathroom "wiping his hands with what appeared to be toilet paper." Defendant sat down beside Schaumann, and Williams began his search of the house.

During his search, Williams found a laundry basket containing clothes, which Defendant admitted belonged to him. Later, Williams searched the laundry basket more thoroughly and found lithium batteries, acetone, Defendant's address books, fuel cleaner, and lids from Mason jars underneath the clothing. As Williams continued to search the house, he found a straw in the child's bedroom closet.[2] When Williams asked Schaumann about the straw, she admitted it contained methamphetamine and that it belonged to her. Thereon, Williams arrested Schaumann but allowed Defendant to leave the house.

After Defendant left, Williams "got to thinking about the suspicious nature of [Defendant] wiping his hands with toilet paper" and undertook a search of the bathroom. Therein, Williams detected an odor of alcohol and discovered a jar and "white paper like items" in the reserve tank of the toilet. The water in the tank was "milky white." A Mason jar was in the tank and inside the jar were coffee filters and water. Next, Williams searched the kitchen of the house where he found coffee filters, spoons, and salt. Other officers found an altered fire extinguisher and a pestle. Based on Williams' training regarding methamphetamine labs, he believed the discovered items were all suited for use in producing methamphetamine; accordingly, he seized them as evidence. Filters and liquid from the Mason jar were placed in two separate containers and sent to a crime lab for testing.

On January 12, 2000, Williams arrested Defendant and then questioned him about the seized items. Defendant admitted the following items belonged to him: the acetone, lithium batteries, spoons, Mason jar and lids, pestle, and the fire extinguisher. Further, Defendant stated the items found in the reserve tank were "pills that were soaking down[,]" and he placed those items in the tank when he saw the officers at the door of Schaumann's house. Laboratory tests of the container contents revealed an

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. Before Williams went to the house, Schaumann's daughter had told him Schaumann kept "drugs in her house underneath her bed." However, in the interim, the child had moved the straw to her closet.

ether solution which contained methamphetamine and ephedrine.[3]

In an amended information, the State charged Defendant with possession of "acetone, lithium batteries, salt, denatured alcohol and lab paraphernalia" with the intent to manufacture a controlled substance. At trial, the State prepared and the trial judge gave a verdict-directing instruction which read, *inter alia:*

> "First, that on or about January 4 . . . defendant possessed lithium, acetone, and ephedrine, and

> "Second, that the defendant knew of its presence and illegal nature, and

> "Third, that the defendant did so with the intent to process acetone, ephedrine, and lithium to create methamphetamine . . . then you will find the defendant guilty. . . ."

Additional facts are provided when necessary in analyzing and discussing Defendant's points relied on.

## DISCUSSION AND DECISION

### POINT I: SUFFICIENCY OF EVIDENCE TO SUPPORT CONVICTION

Defendant's first point urges reversal on the theory there was insufficient evidence upon which to sustain his conviction. The first subpart of this claim is rooted in the fact that the State submitted its case in the conjunctive, that is, it hypothesized in the verdict director that "defendant possessed lithium, acetone, *and* ephedrine" with the intent to create a controlled substance. (Emphasis supplied.) Defendant insists that by submitting the verdict di-

rector in this fashion, the State undertook the burden of showing by appropriate evidence that Defendant knowingly possessed all of the items with the requisite criminal intent. *See State v. Ellinger,* 549 S.W.2d 136, 138 (Mo.App.1977). Accordingly, Defendant argues, *inter alia,* that the State could not and did not prove the offense, as hypothesized in the instruction, beyond a reasonable doubt, because "lithium is not a proscribed substance under § 195.420—it is not a chemical listed in § 195.400.2, nor is it an immediate precursor, as defined in § 195.010(20)."

In pertinent part, § 195.420 provides:

> "1. It is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400, or reagents, or solvents, or any other chemicals *proven to be precursor ingredients of methamphetamine or amphetamine, as established by expert testimony pursuant to subsection 3 of this section,* with the intent to manufacture . . . a controlled substance

> . . . .

> . . . .

> "3. The state may present expert testimony to provide a prima facie case that any chemical, whether or not listed in subsection 2 of section 195.400, is an *immediate precursor ingredient* for producing methamphetamine or amphetamine." (Emphasis supplied.)

Section 195.400 (referred to in § 195.420.1) has a subsection 2 which lists thirty-four substances the sale or transfer of which must be reported to the Missouri Department of Health. Two of the chemi-

---

**3.** Ephedrine is a precursor of methamphetamine and is also a substance listed in § 195.400.2; consequently, possession of ephedrine with intent to manufacture methamphetamine is criminalized as a class C felony. § 195.420.1. Inexplicably, the State never charged Defendant via the information with possessing ephedrine. Instead, it charged Defendant, *inter alia,* with possessing lithium batteries, salt, denatured alcohol, and lab paraphernalia, items not listed in § 195.400.2. Equally puzzling is the fact that the state framed the charge in the conjunctive.

cals hypothesized in the verdict director, acetone and ephedrine, are in the § 195.400.2 list. However, as Defendant correctly points out, lithium, the third chemical mentioned in the verdict director, is not listed.

The fact that lithium is unlisted means that other language in § 195.420.1 must be considered, specifically, the provision that also makes it a crime to possess *"precursor ingredients* of methamphetamine . . . as established by expert testimony pursuant to subsection 3 of this section, with the intent to manufacture . . . a controlled substance."* However, uncertainty about what the legislature intended when it enacted § 195.420 is at once apparent because in subsection one, the statute requires expert testimony to prove a chemical is a "precursor ingredient," while subsection three requires the testimony to demonstrate the chemical is an "immediate precursor ingredient." The uncertainty about what the legislature intended is compounded by the fact that the word "precursor" as used in § 195.420.1 is not explicitly defined, whereas the phrase "immediate precursor" as found in § 195.420.3 is statutorily defined. In that regard, § 195.010(20) defines an "immediate precursor" as a substance that:

"(a) The state department of health has found to be and by rule designates as being the principal compound commonly used or produced primarily for use in the manufacture of a controlled substance;

"(b) Is an immediate chemical intermediary used or likely to be used in the manufacture of a controlled substance, *and*

"(c) The control of which is necessary to prevent, curtail or limit the manufacture of the controlled substance[.]" (Emphasis supplied.)

The State argues that all it had to prove was that the lithium batteries were "pre-cursor ingredients" of methamphetamine which Defendant possessed with the intent to manufacture methamphetamine. The State insists it proved that the batteries were precursor ingredients via the testimony of Kevin Glaser, narcotics investigator with the Missouri Highway Patrol. He testified that either lithium or sodium metal is a "precursor" in the manufacture of methamphetamine, that is, one or the other is "necessary to manufacture . . . methamphetamine." Glaser further testified that initially commercial sodium metal was most often used to illicitly manufacture methamphetamine. However, once sodium metal producers learned of such use, "[t]hey made it a lot more difficult for the criminal manufacturer to get hold of [sodium metal;]" accordingly, lithium stripped from commercial batteries is now the "most . . . common" metal used in the illicit manufacture of methamphetamine.

Defendant disagrees, saying that despite Glaser's testimony, the State did not prove that lithium was an "immediate precursor" *as that phrase is defined in § 195.010(20).* He argues that "[a]ssuming, *arguendo,* that there was evidence of (b), there certainly was no evidence presented by the State that the health department has found lithium to be and by rule designates it as being the principal compound commonly used or produced primarily for use in the manufacture of methamphetamine. Nor was there any evidence that the control of lithium batteries is necessary to prevent, curtail or limit the manufacture of methamphetamine[]" as required by § 195.010(20)(c). Thus, according to Defendant, "there was insufficient evidence that 'lithium' is an immediate precursor of methamphetamine."

The question presented, therefore, is whether the legislature intended by § 195.420 to criminalize possession of chemicals proven by expert testimony to

be *"precursor ingredients"* of methamphetamine (when possessed with the intent to manufacture a controlled substance), or did it intend to criminalize possession of only those chemicals proven by expert testimony to be *"immediate precursors"* of methamphetamine as that phrase is defined in § 195.010(20)?

■ When, as here, the legislative intent cannot be ascertained from the language of a statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous. *State v. Williams*, 24 S.W.3d 101, 115[13] (Mo.App.2000). In such an instance, the rules of statutory construction can be applied. *Id.* Courts look beyond the plain and ordinary meaning of a statute when its meaning is ambiguous. *State v. Haskins*, 950 S.W.2d 613, 616[7] (Mo.App.1997).

■ "It is true that appellate courts strictly construe criminal statutes against the state and resolve any ambiguities in favor of the defendant in a criminal case, but this rule of strict construction does not require a reviewing court to dispense with common sense or to ignore an evident statutory purpose." *State v. Silvey*, 980 S.W.2d 103, 107 (Mo.App.1998). Moreover, the strict construction rule does not mandate such a strained and narrow interpretation of the language as to defeat the legislative intent. *State v. Meggs*, 950 S.W.2d 608, 613[5] (Mo.App.1997). Statutes must be " 'given that interpretation which corresponds with the legislative objective and, where necessary, the strict letter of the statute must yield to the manifest intent of the legislature.' " *Id.* at 613 (citation omitted).

■ "Where there is genuine uncertainty concerning the application of a statute, it is fitting that we consider the statute's history, surrounding circumstances, and examine the problem in society to which

the legislature addressed itself." *Haskins*, 950 S.W.2d at 616[8]. In this instance, what is now denominated the "Comprehensive Drug Control Act of 1989," §§ 195.005.425, were patterned after the "Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C.A § 801 et seq." *State v. Gordon*, 536 S.W.2d 811, 816, n. 2 (Mo.App.1976). Accordingly, it is appropriate to consider the legislative history provided by the United States Congress as an aid in understanding the Missouri Act. *See State v. Mitchell*, 563 S.W.2d 18, 24[7] (Mo.banc 1978). In referring to the federal legislation, the *Gordon* court noted "[i]ts history indicates the Act's broad scope in application—a breadth needed to combat the growing menace of the illicit drug traffic that has filtered into all strata of society, especially the young. The intent of the Act, in mounting a frontal assault on all aspects of the drug problem, is the basis of the broad definition and application of the terms of the Act." 536 S.W.2d at 816, n. 2.

■ In the 1990's, the illicit use, manufacture, and sale of methamphetamine increased dramatically, especially in Missouri. It is not unreasonable to presume that the legislature had this in mind when it amended § 195.420 in 1998 and therefore intended by this enactment to criminalize the possession of more than the "immediate precursor" of methamphetamine and amphetamine and substances listed in § 195.400.2. Specifically, we believe the legislature—despite its § 195.420.3 reference to the phrase "immediate precursor"—intended by its 1998 amendment of § 195.420 to criminalize possession of any non-listed chemical when expert testimony establishes that such chemical is required to produce methamphetamine *and* the chemical is possessed by the accused with the intent to manufacture a controlled substance. We reach

that conclusion, not only because we discern a legislative intent in § 195.420 to mount a frontal assault on all aspects of the methamphetamine drug problem, but also because strict application of § 195.420.3 only leads to absurd consequences that the legislature could not possibly have intended.

For instance, there was absolutely no need to amend § 195.420 in 1998 if the legislature meant to criminalize possession of *only* those substances listed in 195.400.2 *and* the "immediate precursor" of methamphetamine as established by expert testimony. This follows because possession of those substances, if for illicit purposes, has been a felony offense since 1989. The version of 195.420 enacted in 1989 criminalized the possession of substances listed in § 195.400.2, if possessed with the requisite intent. Moreover, the 1989 act placed "phenylacetone" (the only substance ever found by the department of health to be an "immediate precursor" of methamphetamine) in schedule II of controlled substances; consequently, illicit possession of the only immediate precursor of methamphetamine was already a class C felony. *See* §§ 195.017.4(6)(a), RSMo. (1989) and § 195.202, RSMo (1989). *See also* 19 CSR § 30–1.002(1)(B)(6). Under the circumstances, it is wholly unreasonable to assume the legislature intended for the § 195.420(3) mention of "immediate precursor ingredients" to be reference to the § 195.010(20) definition of that phrase. Such interpretation would lead to the absurdity that the 1998 amendment only regulated substances which were already controlled substances. Moreover, such construction would mean expert testimony is required to prove the existence of a rule promulgated by the department of health, i.e., proof via expert testimony that there was a rule declaring a substance to be an immediate precursor of methamphetamine. It is meaningless to require proof of a department of health rule by expert testimony. This follows because § 536.031.5 requires "[t]he courts of this state [to] take judicial notice, *without proof,* of the contents of the code of state regulations." (Emphasis supplied.) The legislature is presumed to know the state of the law and to enact only those statutes which would have meaning and purpose. *State v. Rousseau,* 34 S.W.3d 254, 262[3] (Mo.App.2000). When the legislature alters an existing statute such change is deemed to have an intended effect, and the legislature will not be charged with having done a meaningless act. *State ex rel. Dir. of Rev. v. Gaertner,* 32 S.W.3d 564, 567[6] (Mo.banc 2000).

We also deem it significant that § 195.400.4, empowers the department of health to add other substances to § 195.400.2 "if such substance *is a component of or may be used to produce* a controlled substance." (Emphasis supplied.) By this language the legislature expanded the number of chemicals that could be added to § 195.400.2 beyond what the department of health could classify as "immediate precursors." Thus, for a substance to be an "immediate precursor," the department must find and by rule designate it as "a *principal compound commonly used* or *produced primarily* for use in the manufacture of a controlled substance[,]" whereas, for a substance to be added to the § 195.400.2 list, the department is only required to determine that it "*is a component of or may be used to produce* a controlled substance." (Emphasis supplied.) When 195.400.4, 195.400.2 and 195.420.1 are construed together and harmonized, we discern that the legislature intended by its 1998 amendment of § 195.420 to expand the criminalization of methamphetamine and amphetamine precursors beyond what is defined as "immediate precursors." We also find in

§ 195.400.4 what the legislature intended as a definition for unlisted precursor ingredients to methamphetamine when it amended § 195.420, i.e., any substance proven by expert testimony to be a "component of or may be used to produce" methamphetamine or amphetamine.

Guided by the various tenets of statutory construction mentioned and for the reasons discussed, we conclude that (a) the phrase "immediate precursor ingredients" in § 195.420.3 is to be interpreted "precursor ingredients;" (b) it was the intention of the legislature, as manifested by §§ 195.420.1, 195.400.2 and 195.400.4, to criminalize possession of substances that are components of or may be used to produce methamphetamine or amphetamine *if* a person possesses such substances with the intent prescribed in § 195.420.1; (c) the legislature did not intend by § 195.420.3 to require the state to present expert testimony that a chemical was an "immediate" precursor as the only means of making a prima facie case under § 195.420; (d) to the contrary, the legislature intended to authorize the state, via expert testimony, to make a prima face case that any chemical, whether or not listed in § 195.400.2, was a component of or may be used to produce a controlled substance. Such an interpretation is necessary to effect the objective of the legislation.

Because of our interpretation of § 194.420, the State's only burden under § 195.420.3 was to prove by expert testimony that lithium was a component of or was used to produce methamphetamine. The State bore that burden and, having done so, was not required to adduce evidence to support the definition of immediate precursor found in § 195.010. We reject Defendant's arguments to the contrary.

■■■ In another part of Defendant's first point he argues for reversal on the theory there was no evidence to support the second hypothesis in the verdict-directing instruction, i.e., that Defendant knew of the "*illegal* nature" of the lithium batteries or acetone. In making this argument, Defendant concedes inclusion of the word "*illegal*" in the instruction was not mandatory and that a hypothesis that Defendant had "knowledge of the presence and nature" of acetone and lithium would have been sufficient. This is so because the § 195.010(32) definition of "possessed" or "possessing a controlled substance" was amended before the date of Defendant's offense by deleting the word "illegal" therefrom.

Defendant acknowledges the law had changed as stated above but insists that the State took on the additional burden of proving that Defendant knew the "*illegal* nature*" of acetone and lithium once it submitted its verdict director that included the phrase "*illegal* nature." To support his argument, Defendant cites foreign authority, *State v. Hickman*, 135 Wash.2d 97, 954 P.2d 900 (1999). However, Defendant wholly ignores Missouri authority to the contrary.

The Supreme Court of Missouri has held that giving a jury instruction in a criminal case that puts an additional burden on the state beyond what is legally required to establish guilt does not mandate reversal because such an instruction is not prejudicial to the accused. *State v. Livingston*, 801 S.W.2d 344, 350[6] (Mo.banc 1990). *See also State v. Williams*, 18 S.W.3d 425, 436[19] (Mo.App.2000). This principle attends here, since the instruction given required the State to establish all of the elements of the offense, and the jury was not confused or misled. *Livingston*, 801 S.W.2d at 350.

On this record we are persuaded that the failure, if any, of the evidence to establish that Defendant knew of the "illegal nature" of acetone and lithium in nowise constituted insufficiency of the evidence to support a finding by the jury that defendant possessed lithium and acetone, defendant knew of the presence and nature of acetone and lithium, and defendant possessed lithium and acetone with the intent to process those substances to create methamphetamine. Although the verdict director deviated from MAI–CR3d 325.34, it was not prejudicial. Point I is denied.[4]

*POINTS II & III: ALLEGED INSTRUCTIONAL ERROR; PLAIN ERROR REVIEW*

■■■ Defendant's second and third points both deal with unpreserved error regarding the verdict-directing instruction; consequently, our review of these points, if any, will be for "plain error" per the standard prescribed by Rule 30.20.[5]

■■■ An instructional error rarely rises to the level of plain error. *State v. Reichert,* 854 S.W.2d 584, 601[42] (Mo.App. 1993). In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict as to cause manifest injustice or a miscarriage of justice. *State*

*v. Doolittle,* 896 S.W.2d 27, 29 (Mo.banc 1995); *State v. Cates,* 3 S.W.3d 369, 372[15] (Mo.App.1999). Manifest injustice or miscarriage of justice will result only if it is apparent that the jury's verdict was tainted by the instructional error. *State v. Nolan,* 872 S.W.2d 99, 103 (Mo.banc 1994); *Cates,* 3 S.W.3d at 372[6].

Defendant's second point, which maintains the trial court plainly erred in submitting the verdict director because it "was not modified to instruct the jury to find that one of the charged substances (lithium) was an immediate precursor ingredient[,]" is answered by our disposition of Point I. There, we held that the state did not have to prove lithium was an "immediate precursor" as that term is defined in § 195.010(20). Based on that holding it necessarily follows there was no error, plain or otherwise, which resulted from the court's failure to require the jury to find, via the verdict-directing instruction, that lithium was an immediate precursor ingredient. Point II is denied.

■■■ Defendant's third point charges the court plainly erred in its verdict-directing submission because ephedrine "was not charged in the amended information, and thus the crime as submitted to the jury was fatally in variance to the crime charged by amended information." There is no doubt that a variance

---

4. In another subpart of Point I, Defendant urges reversal because the instruction given the jury hypothesized Defendant possessed ephedrine with intent to manufacture methamphetamine, yet the amended information never charged him with possession of ephedrine; accordingly, Defendant argues reversal is mandated. This, however, is not a sufficiency of the evidence issue to be decided under this point; it is a question of whether there was a fatal variance between the crime charged and the crime submitted to the jury via the verdict-directing instruction. This latter issue is the topic of Defendant's third point and is not addressed here.

5. In his brief, Defendant concedes the issues he raises in Points II and III regarding the verdict-directing instruction were not raised at trial. In apparent recognition that objections to an instruction cannot ordinarily be raised for the first time on appeal, *see, e.g. State v. Baker,* 23 S.W.3d 702[44] (Mo.App. 2000), Defendant requests review per Rule 30.20. Rule 30.20 provides that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

existed in this case between the information and the instruction. However, "instructing upon one form of the offense after the information charges a different form of the offense does not require reversal in every case." *State v. Lee*, 841 S.W.2d 648, 651[5] (Mo.banc 1992). As a general rule, "[i]t is necessary to determine whether the variance between the information and instruction was material and whether the variance 'prejudiced the substantial rights of the defendant' to prepare an adequate defense of the charges against him." *Id.* (citation omitted). When, as here, Defendant did not object to the submission of the instruction, the variance is reviewed under the plain error standard and reversal will occur only if the error results in manifest injustice or a miscarriage of justice. *Id.* at 649.

Here, Defendant makes no attempt to demonstrate how he was prejudiced by the variance or how it resulted in manifest injustice or miscarriage of justice. Defendant's point is devoid of any claim that he was prejudiced or that a manifest injustice or miscarriage of justice resulted from the variance. The argument portion of Defendant's brief merely sets forth (1) the jury instruction, (2) general principles of law, (3) two cases without showing why they mandate reversal here, and (4) a conclusory allegation that due process was violated and constituted plain error. Defendant makes no claim that the variance prejudiced his ability to prepare an adequate defense.

Even so, we note, ex gratia, that Defendant's primary defense was that the chemicals did not belong to him. The variance here is not prejudicial because it in no way affected Defendant's ability to defend against the charges. There is not even a minimal showing the defense would have changed had ephedrine been charged in the information. It was obvious the State was going to present any evidence relating to the elements of manufacturing methamphetamine whether or not charged in the information because it would be relevant to Defendant's intent. Defendant's theory of *innocence* was in no way affected by the failure to charge possession of ephedrine in the amended information; consequently, Defendant cannot demonstrate prejudice and, in fact, does not even claim he was prejudiced. *State v. Taylor*, 857 S.W.2d 482, 488 (Mo.App.1993). Having suffered no prejudice from the variance between the information and the instruction, Defendant did not suffer manifest injustice or a miscarriage of justice. *Lee*, 841 S.W.2d at 652. The variance between the information and the instruction is not plain error and does not require reversal of Defendant's conviction and sentence. *Id.* Point III is denied.

*POINT IV: CLAIM THAT § 195.420 IS UNCONSTITUTIONALLY VAGUE*

■ Under Defendant's final point, he alleges § 195.420 violates his due process rights under the United States and Missouri constitutions because it is unconstitutionally vague in that a person could possess a chemical without knowing he or she was in violation of the law. This follows because the statute allows for presentation of expert testimony at trial that a chemical is a precursor ingredient of methamphetamine.

■ The court of appeals does not have jurisdiction over the constitutional validity of a state statute. Mo. CONST. art. V, § 3. However, the mere assertion that a statute is unconstitutional will not deprive this court of jurisdiction unless the claim is real and substantial, and not merely colorable. *State v. Wiles*, 26 S.W.3d 436, 442[6], n. 4 (Mo.App.2000). Defendant's claim is merely colorable; therefore, we have jurisdiction.

Courts presume statutes to be constitutional, and will find otherwise only when the statute plainly contravenes some constitutional provision. *State v. Stone,* 926 S.W.2d 895, 899[6] (Mo.App.1996). Any doubt should be resolved in favor of the law's validity. *Wiles,* 26 S.W.3d at 442[8]. A statute which fails to clearly define proscribed conduct violates due process guarantees and is void for vagueness. *State v. Allen,* 905 S.W.2d 874, 876[1] (Mo. banc 1995). There are two forms to a vagueness challenge. The one at issue here is whether the statute fails to give " 'a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.' " *Stone,* 926 S.W.2d at 899 (citation omitted). The test becomes " 'whether the language of the statute conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' " *State v. Duggar,* 806 S.W.2d 407, 408 (Mo.banc 1991) (citation omitted).

In this case, Defendant's argument ignores the intent element contained within § 195.420. Defendant cites one case in support of his argument: *State v. Young,* 695 S.W.2d 882 (Mo.banc 1985). There, the court held a statute, which made it illegal to be present at a cockfight, void for vagueness. However, the *Young* court also distinguished other jurisdictions where these statutes were upheld on the basis that an intent element was present. Implicitly, *Young* would not have found the cockfighting statute void had there been an intent element. *Young* does not aid Defendant.

This case falls squarely within the ambit of *State v. Shaw,* 847 S.W.2d 768 (Mo.banc 1993), wherein the court found a scienter requirement within a statute "sufficiently cures any uncertainty" as to the meaning of the statute. *Id.* at 776[9]. Possession of a chemical with the intent to create an illicit drug sufficiently cured any defects inherent in § 195.420. Point denied.

The conviction and sentence are affirmed.

MONTGOMERY, J., CONCURS.

BARNEY, C.J., CONCURS.